### In re George Dunnett

[776 A.2d 406]

No. 98-314

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 4, 2001

*Matthew T. Birmingham, III* of *Fink & Birmingham, P.C.*, Ludlow, for Appellant.

*George Dunnett*, Pro Se, Ludlow, Appellee/Cross-Appellant.

**Morse, J.** Permit applicant Kenneth Tofferi, owner and operator of Totem Pole Ski Shop, Inc., appeals from the decision of the environmental court granting him a conditional use permit, but denying him a variance in connection with renovations of a ski shop located on a parcel of land in the Village of Ludlow. Tofferi argues on appeal that the environmental court erred by conducting a de novo hearing with regard to his applications instead of simply reviewing the decisions of the Ludlow Development Review Board on the record and that the court improperly denied him a variance. Adjoining landowner, George Dunnett, cross-appeals and argues that the court erred by granting Tofferi a conditional use permit. We affirm.

Tofferi owns and operates a ski shop on the corner of Pond Street and West Hill Road in the Village of Ludlow. Tofferi and Dunnett had previously operated the business as partners until Tofferi bought out Dunnett's share sometime around 1982. Dunnett now runs a separate ski shop on property he owns that adjoins the parcel that is the subject of this appeal. He also resides on the adjoining property.

The property on which the shop is located is comprised of what was originally two separate parcels of land designated 16½ and 18 Pond Street which had independent structures that Tofferi later connected. It is located in a residential-commercial district within the village. In December 1995, Tofferi applied to the village for a conditional use permit in order to undertake additional renovations to the property. He subsequently sought a variance which also appeared to be necessary for the proposed construction.

The renovations entailed improvements to and rebuilding of existing structures, as well as demolishing a portion of the existing ski shop and erecting an addition in a new location on the property. Tofferi planned to undertake the changes in part to alleviate a traffic problem created by the parking configuration on his lot. According to testimony before the environmental court, the village had threatened Tofferi with litigation and planned to deny him a certificate of occupancy unless he fixed his parking accommodations.

Tofferi's proposed changes resulted in a reduction in the square footage of the footprint of the building and a reduction in the overall gross square footage of the structure. Tofferi's lot, measuring roughly .37 acre, does not meet the minimum lot size requirement for the district in which it is located, however. Furthermore, the proposed new structure did not meet the minimum setback requirements contained within the village's zoning ordinance. Nor did the structures, either before or after the changes, conform with the maximum lot coverage limit established by the village.

Tofferi applied for a conditional use permit for the changes to the existing structures and a variance with respect to the new structure, both of which were granted by the village after hearings on the matter. Dunnett, Tofferi's neighbor, then appealed the decisions to the environmental court. After a de novo hearing, the court granted Tofferi a conditional use permit, excepting a dormer for which the court determined that Tofferi needed to seek an additional variance, and concluded that he was not entitled to a variance for the new structure based on a determination that he failed to meet any of the five criteria necessary for its grant. Tofferi now appeals to this Court, and Dunnett cross-appeals.

Tofferi argues that two 1995 resolutions by the village board of trustees creating the development review board and establishing that the board be governed by the Municipal Administrative Procedure Act entitle the board to on-the-record review by the environmental court pursuant to 24 V.S.A. § 4471(a) (allowing for on-the-record appeals to the environmental court from decisions of municipal boards). Both Tofferi and the environmental court also refer to an additional resolution or motion by the board of selectmen establishing that appeals of the development review board to the environmental court be on the record. This motion or resolution does not appear anywhere in the record, however.

█ The environmental court determined that the board's practice of simply keeping minutes of hearings as opposed to audio or video recordings did not satisfy the requirement that proceedings "be recorded" found in the Municipal Administrative Procedure Act, 24 V.S.A. § 1205(c), the application of which is statutorily required for on-the-record review under § 4471, and the requirement of an "adequate record" found in § 4471 itself. We find no error in the court's conclusion.

As the court noted, if minutes were sufficient to qualify for on-the-record review, the new amendments regarding the record, i.e., that

proceedings "be recorded" and that an "adequate record" be produced, would have been superfluous because municipal boards have consistently been required to keep minutes under 24 V.S.A. § 4462 since its enactment in 1968. 1967, No. 334 (Adj. Sess.), § 1, amended by 1993, No. 232 (Adj. Sess.), § 14; see also *Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995) (when interpreting a statute, we will not construe it in way that renders language pure surplusage). Additionally, because municipal boards are required to keep minutes, all of their decisions would qualify for on-the-record review under Tofferi's argument if otherwise in compliance with the Municipal Administrative Procedure Act. This result is inconsistent with the statutory scheme which contemplates that only certain proceedings would be reviewed on the record, with the remainder proceeding in the environmental court de novo. See 24 V.S.A. § 4471(a) (requiring that municipal legislative bodies define "what magnitude or nature of development proposal" is the subject of on-the-record review); 24 V.S.A. § 4472(a) (providing that appeals from municipal boards, "if not on the record, as allowed under section 4471 of this title" shall be de novo).

Lastly, V.R.C.P. 74(d), applicable to on-the-record appeals via § 4771(a), provides that the record on appeal to the environmental court shall consist of, among other things, "a transcript of any oral proceedings," which entails a verbatim record of the proceedings. See Black's Law Dictionary 1497 (6th ed. 1990) (defining transcript as a "[w]ord-for-word typing of everything that was said 'on the record' during the trial"). Therefore, the environmental court's determination that the taking of minutes did not satisfy the requirements of § 4471 was not error. Because the hearings on Tofferi's applications were not recorded by the development review board, the court properly conducted a de novo hearing on his requests for a conditional use permit and a variance.

■ Tofferi also argues that the court improperly denied him a variance for the construction of the new structure on the property. The court determined that Tofferi had failed to meet *any* of the five criteria necessary for the grant of a variance under the village's zoning regulations. Village of Ludlow, Vt., Zoning and Flood Hazard Regulations § 350.3 (1990) [hereinafter Regulations]; see also 24 V.S.A. § 4468(a) (listing criteria necessary for grant of variance). We have stated, "[a] zoning variance *must* be based on a showing of conformance with *each* of the five statutory criteria set forth in 24 V.S.A. § 4468(a)." *Blow v. Town of Berlin Zoning Adm'r*, 151 Vt. 333, 335, 560

A.2d 378, 379 (1989) (emphasis added). Therefore, if we find that the court did not err on any one of the factors, we must affirm. See *Gadhue v. Marcotte*, 141 Vt. 238, 240, 446 A.2d 375, 376 (1982). Furthermore, we will uphold the environmental court's construction of a town's zoning ordinance unless clearly erroneous, arbitrary or capricious, *In re Miserocchi*, 170 Vt. 320, 323, 749 A.2d 607, 610 (2000); see also *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998) (applying standard to environmental court's construction of town zoning ordinance which mirrored statutory language), and review determinations of fact for clear error. See *In re Miller*, 170 Vt. 64, 69, 742 A.2d 1219, 1223 (1999).

█ Because we cannot say that the court erred in its determination on each and every factor, we are compelled to affirm the denial of the variance. For instance, the court determined that a variance was not necessary for reasonable use of the property, see Regulations § 350.3(2) (requiring that authorization of variance is *necessary* to enable reasonable use of the property); 24 V.S.A. § 4468(a)(2) (same), noting that the property has several current structures that may serve as a retail space for the ski shop. Cf. *Gadhue*, 141 Vt. at 240-41, 446 A.2d at 377 (reversing judgment granting variance for addition of structure to property based on a failure to meet second criterion and noting "the property was already developed and being used as both a residence and a retail business"); *Sorg v. North Hero Zoning Bd. of Adjustment*, 135 Vt. 423, 426, 378 A.2d 98, 101 (1977) (reversing judgment granting a variance for an addition to an existing inn and noting "the property here is not only useable as an inn, but has been and still is so used, since 1890"). The court's determination that Tofferi can currently make reasonable use of the property without the addition of the new structure, and therefore failed to qualify for a variance under the second criterion, is neither clearly erroneous, arbitrary nor capricious. See *Gadhue*, 141 Vt. at 240, 446 A.2d at 376 (noting that "if *any* reasonable use can be made of the property" in conformity with current zoning regulations, criterion two is not satisfied) (emphasis added).

Although, as the environmental court noted, the proposed reconfiguration of the buildings on the property (undertaken at the behest of the village) may in fact benefit the village through improved safety regarding traffic entering and exiting the property, as well as improved commercial potential for the property, "[f]or relief by way of a variance[,] the statute governing its granting must prevail, rather than a judicial finding indicating, at best, general desirability." *Sorg*,

135 Vt. at 427-28, 378 A.2d at 102. We recognize that the director of planning services for the village testified that few properties in the commercial-residential district are in compliance with the town ordinances and that the commercial properties located there are generally incapable of developing further without variances. He characterized it as a "traditional Vermont village" with very many small, irregular lots. Under the zoning ordinance, however, this area has been slated to bear any further commercial development in the village, it being the main commercial district. That being said, it appears that the village's zoning regulations for the district at issue may be at odds with the goal of focusing development there. The solution, however, should not be the piecemeal and/or wholesale grant of variances, but rather reconsideration of the regulations themselves. As the environmental court appropriately noted, "[t]he Village cannot extend the variance provisions beyond their scope to compensate for deficiencies in the existing zoning regulations."

■ Dunnett raises four issues in his cross-appeal, essentially arguing that Tofferi should not have been granted a conditional use permit for the renovations to the existing structures on the property. Dunnett first concedes that Tofferi's renovations meet the general standards set forth for conditional use approval in the Village of Ludlow's zoning regulations, see Regulations § 360, but then argues that the changes do not conform to the bylaws (one of the *general* standards under § 360) because the number of parking spaces is inadequate for the gross square footage of the structures on the property (excepting 2000 square feet for an apartment on the property which possessed separate parking). We conclude, however, that the court's interpretation of the village's parking requirement found in § 630.1(f) and its concomitant conclusion that the parking arrangement conformed to this bylaw were not in error.

Section 630.1(f) requires "one parking space for every two hundred (200) square feet of floor area" with regard to commercial buildings. The court interpreted "floor area" to mean retail floor area, which was consistent with other provisions regarding parking requirements (e.g., looking at office floor space in office buildings and looking at seating area in restaurants). Additionally, the director of planning services for the village testified that the development review board used sales area in its analysis. Cf. *In re Kisiel*, 172 Vt. 124, 135, 772 A.2d 135, 143 (2000) (urging the Environmental Board to give deference to a town's own interpretation of its town plan when applying Act 250). The court's interpretation, therefore, appears to be the correct one. Using retail

floor space, the 21 spaces allocated for the retail use of the building were adequate. Accordingly, the court did not err when it concluded that the renovations were consistent with the village's bylaws and thus met the general standards under § 360.

Dunnett also argues that approval should nevertheless have been denied based on the fact that the existing structures do not meet the setback requirements, that they violate the maximum lot coverage limit for the district in which the property is located, and that the property does not meet the minimum lot size requirement for nonresidential use in the district. It is true that under the village zoning regulations, § 360, a structure must also meet the specific standards for the zoning district in which it is located in order to qualify for a conditional use permit. See also 24 V.S.A. § 4407(2) (allowing municipalities to adopt specific standards in addition to the mandatory general standards regarding conditional uses); *Blundon v. Town of Stamford*, 154 Vt. 227, 231-32, 576 A.2d 437, 440 (1990) (reinstating zoning board of adjustment's denial of a conditional use permit based on applicant's failure to meet specific standard for district in which proposed development was to be located). The structures for which a conditional use permit was sought in this case, however, were preexisting, nonconforming structures with regard to these regulations. Under Dunnett's argument, no preexisting, nonconforming structure could ever qualify for a conditional use permit, for by its very nature it would never meet the specific regulations for the district in which it is located. Therefore, it appears the environmental court's approach, applying the portion of the zoning regulations specifically governing nonconforming structures, was the proper one.

Under this approach, changes in a preexisting, nonconforming structure would render the structure ineligible for a conditional use permit only if the changes resulted in an increase in the degree of nonconformance. See Regulations § 370(5) (allowing for reconstruction, alteration and enlargement of nonconforming structures as long as "such enlarged portion conforms to the building requirements of these Regulations"); *id.* § 370.1 (allowing maintenance and repair of noncomplying structures "provided such action does not increase the degree of noncompliance"). The court specifically determined that the renovations, including the increase in the height of the roof line of the portion of the building once used as a bakery, did not constitute an impermissible increase in the degree of nonconformance. See also *id.* § 530 (establishing thirty-five feet or three stories, whichever is less, as

the maximum height for buildings located in the residential-commercial district). Thus, the specific standards were met as required by the zoning ordinance. Accordingly, the court did not err by granting Tofferi the conditional use permit.*

Dunnett also argues that the court should have denied Tofferi a conditional use permit based on the fact that the renovations increased the overall size of the portion of the building referred to as the old bakery. He notes that the roof line was raised and the volume of the building thereby increased. As noted above, however, the village's zoning ordinance permits reconstruction and enlargement of preexisting, nonconforming structures as long as the enlarged portion conforms to the building requirements for the district. *Id.* § 370(5). Also as noted above, the court determined that the roof line was a permissible enlargement, still within the limit of the lesser of thirty-five feet or three stories, a finding supported by the record. Furthermore, there is no limitation on the volume of structures in the residential-commercial district. And notably, the overall square footage, the overall footprint and the overall percentage of lot coverage were all reduced by the renovations to the preexisting structures on the property, all of which are connected to one another. Therefore, we cannot say the court erred by failing to deny the conditional use permit based on the increased height of the portion of the structure known as the old bakery building.

Finally, Dunnett argues that the court should not have issued a conditional use permit for the renovated structures because Tofferi failed to establish that he ever received a certificate of occupancy for the portion of the connected structures known as the Old Lampert House, located on the 18 Pond Street lot, following its connection to

---

* Although the court granted Tofferi a conditional use permit for the renovated structures, it excepted from its grant of the permit the dormer added to the raised portion of the old bakery roof, determining a variance was necessary for this change. Although on the last page of his brief Tofferi states that the conditional use permit *as granted by the Village of Ludlow Development Review Board* should have been "confirmed in its entirety," he fails to address the *environmental court's* exception of the dormer from *its* grant of the conditional use permit anywhere else in his brief. In fact, he states on the second-to-last page of his brief, "the *Environmental Court* was correct in granting a Conditional Use Permit." (Emphasis added.) We have consistently stated that we will not address issues on appeal that are not briefed, e.g., *Mouat v. Wolfe,* 150 Vt. 637, 640, 556 A.2d 99, 101 (1989); *Bishop v. Town of Barre,* 140 Vt. 564, 579, 442 A.2d 50, 57 (1982), and, therefore, will not address the portion of the environmental court's decision excepting the dormer from its grant of the conditional use permit and concluding that Tofferi must apply for a variance for that portion of the structure.

16½ Pond Street in 1989. Dunnett argues that the environmental court's finding that the certificate of occupancy issued by the village in 1995 for 16½-18 Pond Street permitted Tofferi to use the Old Lampert House portion of the connected structures for retail use is clearly erroneous. We will only disturb a finding of fact, however, if there is no credible evidence in the record to support it. *Rubin v. Sterling Enters.*, 164 Vt. 582, 588, 674 A.2d 782, 786 (1996). Laurence Melen, the village's director of planning services, as well as its administrative officer, testified that the ski shop possessed a certificate of occupancy and was not in violation of any ordinance at the time of the hearing before the court. Therefore, we will not disturb the court's determination.

*Affirmed.*