**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Gardner Construction,   }
Inc.                              }
                                  }      Docket No. 63-4-03 Vtec
                                  }
                                  }

Decision and Order

Appellant Gardner Construction, Inc. appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Shelburne, denying a variance application regarding the property at 1947 Shelburne Road.

Appellant appeared through its principal, Brad Gardner, who appeared and represented himself and the corporation; the Town of Shelburne is represented by Jill E. Spinelli, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, and the written memoranda and proposed findings, the Court finds and concludes as follows.

The parcel of property at issue in this appeal is an undeveloped trapezoidal parcel located at the corner of Lakeview Drive and U.S. Route 7 (Shelburne Road) in the Residential-Commercial zoning district. It was created in connection with the so-called Sunset Glow subdivision in 1964, which also appears to have created Lakeview Drive itself, a dead end street. Appellant= s parcel was designated on the 1964 plan for that subdivision, in evidence as Exhibit 3, as a >commercial[1] lot.= The lot= s original measurements and angles as shown on Exhibit 3 allow it to be reproduced to form the basis for the building envelope diagrams attached to this decision. The parcel= s westerly boundary with the adjacent lot in the subdivision is at a 90E angle with its front or southerly boundary with Lakeview Drive and at a 90E angle with its northerly boundary as well. The parcel measured 132 feet along its westerly boundary with the adjacent lot in the subdivision, 150 feet along Lakeview Drive, 135.75 feet along Route 7, and 197 feet along its northerly boundary with the adjacent lot to the north. With those measurements, its area can be calculated as containing 22,902 square feet (or approximately .526 of an acre).

The parcel as it now exists is partially wooded. Most of the parcel as it now exists is at the 200-foot elevation of Route 7, with an approximately 7-foot-high steep bank at its southwesterly, westerly and northwesterly edges down to the present 193- or 192-foot elevation of Lakeview Drive, the lot to the west, and the lot to the north. The adjacent lot to the west is occupied by a residential use, as is the adjacent lot to the north. The lot across Lakeview Drive is occupied by a commercial use, as is the lot across Route 7. Route 7 is the major north-south highway for the region and carries an extremely heavy traffic load. As the parcel now exists, an 18-foot-wide strip has been taken from its Route 7 property boundary for the widening of Route 7.

Appellant proposes to build a new 70' x 40' commercial building on the parcel, oriented parallel to Route 7, with access only onto Lakeview Drive. Appellant proposes a 35-foot setback from the building to the present Route 7 property boundary, a setback ranging from 33 feet to 422 feet to the Lakeview Drive property boundary, a setback ranging from 663 feet to 872 feet from the westerly boundary, and a setback ranging from 20 feet to 30 feet from the northerly boundary.

Appellant filed an alternative commercial proposal with its post-hearing filings, and also referred to evidence that had been excluded at trial regarding the Town= s action on other variance

requests in the area. The Town has moved to strike. The alternative proposal was not presented in evidence and therefore cannot be considered by the Court. Further, it was not presented to the DRB for its consideration, and is sufficiently different from the proposal on appeal in the present matter so that the DRB should rule on it in the first instance. The evidence regarding other variance applications on other properties was excluded at trial. Accordingly, the motion to strike is granted. However, although the Court will not evaluate any alternative proposal in the present appeal, any ruling in this matter will be without prejudice to any alternative proposal Appellant may wish to present to the DRB in a future application.

Appellant proposes to contour the land on the parcel so that the parking lot and the westerly side of the building will be located at an approximate elevation of 194 to 193 feet, while the easterly or Route 7 side of the building will be located at an approximate elevation of 204 feet. Similar site contouring could be done to create an area for a residential house and yard at the lower elevation, at the elevation of the adjacent residential parcel on Lakeview Drive. The earth moved for that purpose could be used to create a berm between the residential building envelope and Route 7, to insulate that building site somewhat from the noise of the Route 7 traffic. Without such contouring, the noise of Route 7 traffic is such as to make conversation difficult in the area of the parcel near Route 7. A new residential building on the parcel would not be very attractive to a buyer; the property would bring a greater return on investment if used for a commercial purpose.

As of Appellant= s purchase of the lot on July 9, 2002, the Zoning Bylaws in effect were those last amended effective on December 14, 1999. Under ' ' 810 and 820 of those Zoning Bylaws, a long list of residential and commercial uses of the lot are allowed as permitted or conditional uses, but the dimensional requirements for these two types of uses differ considerably. ' 830. Residential uses require 20,000 square feet per unit, except for elderly housing and motels which require 3,500 square feet per unit. All other permitted and conditional uses require a two-acre minimum lot size. Thus with respect to lot size, the only complying uses at the time Appellant purchased the lot would have been a single-family home (with or without a home occupation or day care use) or an up-to-six-unit elderly housing project (or a six-unit motel or bed-and-breakfast if it is considered a residential use), as the lot lacked the minimum lot size for any non-residential use.

We note that Appellant has not requested a variance from this two-acre lot size requirement for a non-residential use; Appellant has only requested variances from the setback requirements for a commercial use on the property. Appellant argues that the lot is exempt from the two-acre lot size requirement for a non-residential use, even though it meets the lot size requirement for a residential use, based on the > existing small lot= protection of ' 1690.2. That section provides in pertinent part that:

Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of these zoning regulations and thereafter may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than 1/8th acre in area with a minimum width or depth dimension of forty (40) feet.

The lot at issue in this case does not trigger the protections of this > existing small lot= provision (or the underlying provision of 24 V.S.A. ' 4406(1)) because it does not fail to conform to the minimum lot size requirements in the district. That is, there are allowed uses in the district for which it is not undersized[2].

In any event, even if it qualified for existing small lot protection for a commercial use, exempting it from the lot size requirement for a commercial use, that exemption would not also exempt it from having to meet the setback requirements or other dimensional requirements applicable in the district. Moreover, the fact that A the property is an existing small lot . . . cannot be determinative of a variance request. Indeed, these factors are not even mentioned in the variance statute.@ Kashner v. Greensboro Zoning Bd. of Adjustment, 172 Vt. 544, 545 (2000); Blow v. Town of

Berlin Zoning Administrator, 151 Vt. 333, 335 (1989). We turn to the criteria applicable to the requested setback variances.

Under the 1999 Zoning Bylaws, the term > lot frontage= is defined in ' 1810.24 as A a boundary of a lot along a public street, . . . . private road or [approved] right-of-way.@ The term > yard, front= is defined as the yard between the A right-of-way line of the principal access@ and the front line of the building (extended to the sidelines of the lot). Reading these two definitions together, the literal terms of the Zoning Bylaws only call for the calculation of a front yard setback on one side of a lot: that is, the side of the lot having its A principal access.@ The term A corner lot@ is not defined and the Zoning Bylaws do not provide any specific guidance for so-called > corner= lots (or for so-called > through= lots), that is, for lots having frontage on more than one street. Nothing in the Zoning Bylaws allows or requires the front yard setback to be applied to more than one side of a lot, or to be applied to a side of the lot other than the one on which its A principal access@ is located.

Nevertheless, the Town= s informal practice has been to apply the > front yard= setback to each side of a lot having any > frontage= on any street. For properties along Route 7, the Town= s informal practice has been to provide relief from the particularly wide Route 7 front yard setback requirements by calculating the > second= front yard setback according to the rules for property in > all other areas.= We recognize that, although there is no basis in the Zoning Bylaws for this practice, its common sense is apparent. On the other hand, we must apply the definitions from the Zoning Bylaws rather than this informal practice, unless or until the practice is either codified in the Bylaws or provided in the Bylaws as being in the discretion of the Zoning Administrator.

Under the Zoning Bylaws, Appellant= s lot has frontage both on Route 7 and on Lakeview Drive, but as the proposed access is only on Lakeview Drive, the required front yard setback must only be provided on the Lakeview Drive side of the property, with the required side/rear yard setbacks to be applied to the three other sides of the property.

The minimum front and side/rear yard setbacks for a single-family house are described in ' 830.2 for A frontage on Route 7@ as 90[3] feet for front yard setbacks and 20 feet for side/rear yard setbacks. The minimum front and side/rear yard setbacks for a single-family house are described in ' 830.2 for A all other areas@ as 30 feet for front yard setbacks and 15 feet for side/rear yard setbacks.

The minimum front and side/rear yard setbacks for other permitted and conditional uses are described in ' 830.2 for A frontage on Route 7@ as 90 feet for front yard setbacks and 50 feet for side/rear yard setbacks. The minimum front and side/rear yard setbacks for other permitted and conditional uses are described in ' 830.2 for A all other areas@ as 60 feet for front yard setbacks and 25 feet for side/rear yard setbacks when adjacent to another non-residential use, but 100 feet when adjacent to a residential use.

For a lot such as this one, with frontage both on Route 7 and a side street, but with its front yard facing the side street, there are two possible interpretations of the setback measurement methods in ' 830.2 under the ordinance, in addition to the method employed by the Town= s informal practice in calculating two front yard setbacks for a corner lot. One interpretation of the ordinance language is to interpret ' 830.2 as giving the minimum front and side/rear setbacks for > lots with [any] frontage on Route 7= (regardless of whether the front yard faces Route 7), and for > lots in all other areas,= that is, not having any frontage on Route 7. A second interpretation of the ordinance language is to read the special setback requirements for > frontage on Route 7= as applying only to whatever yard (front, side or rear) faces that frontage on Route 7, and to read the > all other areas= setbacks as applying to the yards that do not face Route 7. The DRB did not specify the analysis method and did not provide a ruling on or interpretation of ' 830.2. We will analyze Appellant= s proposal under each of these methods.

Applying the first ordinance interpretation to this lot at the time Appellant purchased it, for a residential use the required setbacks would have been 90' on Lakeview Drive, 20' on Route 7, 20' to the north, and 20' to the west, leaving a residential building envelope of 22 feet by approximately 140 feet, or approximately 3080 square feet. (See Diagram[4] 1 attached.) Applying the second ordinance interpretation to this lot at the time Appellant purchased it, for a residential use the required setbacks would have been 30' on Lakeview Drive, 20' on Route 7, 15' to the north, and 15' to the west, leaving a residential building envelope of 86 feet by an average of 140 feet, or approximately 12,040 square feet. (See Diagram 2.) Applying the Town= s informal practice to this lot at the time Appellant purchased it, for a residential use the required setbacks would have been 30' on Lakeview Drive, 90' on Route 7, 20' to the north, and 20' to the west, leaving a residential building envelope of 82 feet by an average of 60 feet or approximately 4920 square feet. (See Diagram 3.)

Applying the first ordinance interpretation to this lot at the time Appellant purchased it, for a non-residential use[5] the required setbacks would have been 90' on Lakeview Drive and 50' on Route 7, 50' to the north and 50' to the west, leaving no complying non-residential building envelope. Applying the second ordinance interpretation to this lot at the time Appellant purchased it, for a non-residential use the required setbacks would have been only 60' on Lakeview Drive and 50' on Route 7, but 100' to the north and 100' to the west (because those sides adjoin residential uses), also leaving no complying non-residential building envelope. Applying the Town= s informal practice to this lot at the time Appellant purchased it, for a non-residential use the required setbacks would have been 60' on Lakeview Drive, 90' on Route 7, 50' to the north, and 50' to the west, leaving a non-residential building envelope of 22 feet by an average of 28 feet or approximately 616 square feet. (See Diagram 4.) Even applying Appellant= s own calculation method (as shown on Exhibit 5) of treating the only front yard as that facing Route 7, and disregarding the 100-foot setback requirement adjacent to residential uses, the setbacks applicable to this lot at the time Appellant purchased it for a non-residential use would have been 50' on Lakeview Drive, 90' on Route 7, 50' to the north, and 50' to the west, leaving a non-residential building envelope of no greater than 935[6] square feet. (Compare Exhibit 5, p.2 with Diagram 5).

About a month after Appellant purchased this lot, the Vermont Agency of Transportation completed a condemnation of an 18-foot-wide strip of land along the Route 7 boundary of Appellant= s lot, reducing the building envelope available on the lot, depending on the calculation method. No evidence was presented as to whether the condemnation proceedings compensated Appellant for the difference in value between any potential commercial use of the remaining lot and any potential residential use of the remaining lot.

Applying the first ordinance interpretation to this lot after the condemnation, for a residential use the required setbacks would have been 90' on Lakeview Drive, 20' on Route 7, 20' to the north, and 20' to the west, leaving a residential building envelope of 22 feet by approximately 125 feet, or approximately 2750 square feet. (See Diagram 6.) Applying the second ordinance interpretation to this lot after the condemnation, for a residential use the required setbacks would have been 30' on Lakeview Drive, 20' on Route 7, 15' to the north, and 15' to the west, leaving a residential building envelope of 86 feet by an average of 120 feet, or approximately 10,320 square feet. (See Diagram 7.) Applying the Town= s informal practice to this lot after the condemnation, for a residential use the required setbacks would have been 30' on Lakeview Drive, 90' on Route 7, 20' to the north, and 20' to the west, leaving a residential building envelope of 82 feet by an average of 40 feet or approximately 3280 square feet. (See Diagram 8.)

Applying the both the first and the second ordinance interpretation to this lot after the condemnation, for a non-residential use the required setbacks also would have left no complying non-residential building envelope. Applying the Town= s informal practice to this lot after the condemnation, for a non-residential use the required setbacks would have been 60' on Lakeview Drive, 90' on Route 7, 50' to the north, and 50' to the west, leaving a non-residential building

envelope of 22 feet by an average of 11 feet or approximately 242 square feet. (See Diagram 9.) Applying Appellant= s calculation method (as shown on Exhibit 5) of treating the only front yard as that on Route 7, and disregarding the 100-foot setback requirement adjacent to residential uses, the setbacks applicable to this lot for a non-residential use after the condemnation would have been 50' on Lakeview Drive, 90' on Route 7, 50' to the north, and 50' to the west, leaving a non-residential building envelope of approximately 170 square feet as calculated by Appellant= s engineer (or approximately 288 square feet as plotted on the base map). (Compare Exhibit 5, p.2 with Diagram 10).

In order to qualify for a variance, Appellant must meet all five requirements of 24 V.S.A. ' 4468, made applicable by ' 1600 of the Zoning Bylaws. The parties agreed that only criteria (2), (3), and (5) were at issue in the present appeal:

* * *

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That the unnecessary hardship has not been created by the appellant; [and]

* * *

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.

If any one of the variance criteria is not met, the variance request must be denied. In re Dunnett, 172 Vt. 196, 199-200 (2001); and see In re Appeal of Mulheron, Docket No. 2002-090 (Vt. Supreme Ct., Sept. 25, 2002) (three-justice panel). In the present case, none of the three contested criteria is met by Appellant= s application.

Most importantly, Appellant= s parcel can be developed in strict conformity with the provisions of the zoning regulation, and there is therefore no > unnecessary hardship.= Kashner v. Greensboro Zoning Bd. of Adjustment, 172 Vt. 544 (2000). That is, a variance cannot be used to create a nonconforming commercial use where one did not previously exist, unless no conforming residential or commercial use of the property can be made, and all the other variance criteria are met. Appellant has not shown that a single-family home or small elderly housing development (depending on the setback calculation method), or home occupation or small professional office would not be a reasonable use of the property, only that it may not be the most lucrative use of the property. Sorg v. North Hero Zoning Bd. of Adjustment, 135 Vt. 423, 425-26 (1977). In light of the purpose statement for the Residential-Commercial zoning district in ' 800 that it is intended to avoid strip development along Route 7[7] and to permit a harmonious relationship between residential and other uses, and the fact that residential uses are permitted uses in the district, we cannot conclude that a residential use for this property is not a reasonable use.

Further, although a purchaser of a parcel succeeds to the rights of its prior owners, including any right to a variance, Appellant knew or should have known at the time of purchase of this parcel that it was undersized for any commercial use and that it would need a lot size variance and setback variances for a commercial use of the size Appellant contemplated. In that sense, by purchasing the property intending to make a commercial rather than a residential use of it, Appellant has created the hardship from which he now seeks relief. See, e.g., In re McDonald= s Corp., 151 Vt. 346, 349 (1989); In re Cumberland Farms, Inc., 151 Vt. 59, 61 (1989); In re Ray Reilly Tire Mart, Inc., 141 Vt. 330, 332 (1982).

Finally, the proposed variance does not represent the minimum variance which could afford relief. Not only could Appellant make a complying residential use of the property, but Appellant could have built a small commercial building before the taking, and Appellant should not be entitled to a variance to build a larger commercial building on the smaller parcel than would have complied with the setback requirements on the larger parcel.

Based on the foregoing findings and conclusions, it is hereby ORDERED and ADJUDGED that Appellant= s application for setback variances to allow the construction of the proposed commercial building is DENIED, without prejudice to any future application Appellant may wish to make regarding this property.

Dated at Barre, Vermont, this 4th day of December, 2003.

_____
Merideth Wright
Environmental Judge

Note: the attached four pages of diagrams are found only in the original in the Court= s files, or in photocopies from that original, not in electronic format.

---

**Footnotes**

1.     However, it remained undeveloped until the present application, so that the zoning regulations applicable to its development are those in effect as of the present application for development, not those in effect at the time of the subdivision. In re Taft Corners Assocs., 171 Vt. 135, 139-140 (2000).

2.     A more dramatic example may clarify this issue: if a district allowed single-family houses on half-acre lots, but required five-acre lots for resort hotels, or for landfills, or for schools, or for shooting ranges, a preexisting half-acre lot could not qualify to apply for the five-acre uses under the existing small lot provision. See, Lubinsky v. Fair Haven Zoning Board, 148 Vt. 47, 50 (1986), in which an existing small lot with a single-family house could not be converted to duplex use under that provision, as discussed in In re Appeal of Richards, 13 Vt.L.W. 265, 266 (2002).

3.     Or 0.5% of the square footage of the lot coverage, whichever is greater. For the purposes of discussing this lot we need only use the 90-foot measurement.

4.     The diagrams do not form an essential part of this decision; they are merely an aid to visualization of the building envelopes resulting from the different setback calculation methods.

5.     Disregarding the lot size requirement for a non-residential use, which also is not met for this parcel, as discussed above.

6.    A calculation of that area from the lot measurements rather than by scale from Exhibit 5 yields a slightly smaller area of 864 square feet).

7.    The question of whether that goal is achievable or may be a valiant but losing battle is a policy question for the Town as reflected in its municipal plan and its ordinance requirements; the Court should not and will not make any determination about the practicality of that goal in this location. Chioffi v. Winooski Zoning Board, 151 Vt. 9, 13 (1989) (courts' function in de novo trials in zoning and planning appeals is "not to set policy for the municipalities.")