STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Kim Wong Notices of Violation | } | Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec |
| (Appeals of Wong) | } | |
| | } | |

Decision and Order on Appellant's Motion for Summary Judgment

In Docket No. 169-7-06 Vtec, Appellant Kim Wong appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Village of Essex Junction upholding a Notice of Violation for raising livestock in a residential district, contrary to §725 of the Village of Essex Junction Land Development Code. In Docket No. 293-12-06 Vtec, Appellant appealed from a later decision of the ZBA upholding a Notice of Violation for operating an animal boarding facility. The two appeals have been consolidated. Appellant is represented by Jason Ruwet, Esq.; the Village of Essex Junction is represented by David Barra, Esq. Appellant has moved for summary judgment. The following facts are undisputed unless otherwise noted.

Appellant keeps twenty homing pigeons in an accessory building (storage shed) attached to the rear of his attached residential garage at his property at 25 Aspen Drive, in the R-1 Residential zoning district. The property is 100' x 150' in area and contains his house, garage, driveway and exterior deck, as well as the storage shed. Appellant applied for and received a zoning permit in early 2006 to construct the 8' x 15' accessory building as a "storage shed;" the application listed as the proposed storage: "lawnmower, lawn furniture, snow[bl]ower, sc[r]ap stuff" and did not mention the housing of pigeons or the keeping of any animals.

1

On April 19, 2006 the Zoning Administrator issued a Notice of Violation to Appellant for violation of §725 of the Village's Land Development Code, which prohibits the "raising, keeping, or harboring of livestock, wild animals or other domesticated farm animals," whether "for personal use or commercial purposes," except in the Planned Exposition and Planned Agricultural zoning districts, and which also requires a minimum parcel size of ten acres for such a use. Appellant timely appealed to the ZBA, which upheld the Zoning Administrator's decision; Appellant's appeal of that decision is Docket No. 169-7-06 Vtec.

After the motion for summary judgment had been filed in Docket No. 169-7-06 Vtec, the Village issued a second Notice of Violation to Appellant for operating an animal boarding facility in a district in which it is not an allowed use. In addition, the Notice of Violation cited the use as a change of use from the storage for which the shed's zoning permit was issued. Appellant timely appealed the second Notice of Violation to the ZBA, which upheld the Zoning Administrator's decision; Appellant's appeal of that decision is Docket No. 293-12-06 Vtec. No enforcement action has been filed based on either Notice of Violation.

The general rules of statutory construction apply when interpreting zoning ordinances. In re Casella Waste Management, 2003 VT 49, ¶6. The court must "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance," In re Stowe Club Highlands, 164 Vt. 272, 279–80 (1995) (citation omitted), so that no language is surplusage, In re Dunnett, 172 Vt. 196, 199 (2001), and so that the construction does not produce an absurd result. See, e.g., Willard v. Parsons Hill Partnership, 2005 VT 69, ¶21, 178 Vt. 300, 308 (2005).

Section 725 of the Land Development Code is applicable to the "raising, keeping, or harboring" of three categories of animals: (1) livestock, (2) other domesticated farm animals, and (3) wild animals. The Land Development Code specifically defines "livestock

2

and other domesticated farm animals" as those animals that are "typically associated with farm or agricultural practices." §201(C)(102). The definition specifies chickens, ducks, geese and ostriches as birds included in this category. Neither party asserts that racing pigeons are typically associated with farm or agricultural practices. Therefore, although they may qualify as domesticated animals, racing pigeons do not fall within the definition of "<u>livestock</u> and other domesticated <u>farm</u> animals." (Emphasis added.)

Nor do racing pigeons fall within the definition of the term "wild animals," which is also specifically defined in the Land Development Code as "any non[-]domesticated animals." §201(C)(196). Neither party asserts that racing pigeons fall outside the category of "domesticated animals" as that term is commonly used, §201(A)(4), to mean an animal that has been trained "to live in a human environment and be of use to humans." <u>American Heritage Dictionary of the English Language</u>[1] (4th ed. 2000). Additionally, the state statutory definition, §201(A)(3), of the term "domestic animal" includes psittacine birds, 6 VSA §1151(2), further defined by the rules of the State of Vermont Department of Agriculture, Food and Markets to include birds "commonly sold in pet shops . . . including . . . pigeons[.]" Rules Governing the Importation of Domestic Animals §I(58).

As the twenty pigeons raised and kept by Appellant are kept for racing purposes, that is, are trained to be of use to humans, they fall within the category of domesticated animals. They are not wild animals, nor are they livestock or other domesticated farm animals; therefore they are not subject to regulation under §725 of the Land Development Code. In Docket No. 169-7-06 Vtec, summary judgment must be granted to Appellant, vacating the Notice of Violation and concluding that appeal.

In Docket No. 293-12-06 Vtec the Village argues that, even if Appellant's pigeons do

---

[1] Available at: http://www.bartleby.com/61/23/D0332300.html

not fall within the regulatory ambit of §725, the shed's use for keeping five or more animals makes it an animal boarding facility, also not an allowed use in the R-1 district. Further, the Village argues that this use is beyond the scope of Appellant's original application and the resulting permit for the shed as a storage shed.

Two definitions in the Land Development Code are pertinent to this analysis: the definition of "animal boarding facility or kennel," and the definition of "animal shelter." Section 201(C)(12) defines the use category of "animal boarding facility or kennel"as any "land, structure, or facility designed and used for the temporary storage or housing of five (5) or more domesticated animals at any time," exclusive of animals on a working farm. Section 201 (C)(14) defines the use category of "animal shelter" as "any accessory structure or property which is used for housing or sheltering four (4) or fewer common household pets over three (3) months of age, outside of the principal permitted structure." Pursuant to the use table at §615, animal shelters are allowed as a permitted use in most zoning districts, including the R-1 zoning district. By contrast, animal boarding facilities are allowed only in the Planned Exhibition zoning district (as a conditional use) and in the Planned Agriculture zoning district (as a permitted use).

As the accessory building houses more than four pigeons, even if the pigeons qualify as "common household pets" the storage building does not qualify as a permitted-use animal shelter under the definition in §201 (C)(14).

The use category of "animal boarding facility" does not require that the facility be operated as a business. Rather, the essential elements are that the land, structure or facility be "designed and used" for the purpose of the "temporary storage or housing" of at least five domesticated animals.

Appellant does not contest that the shed is designed and used for the purpose of housing twenty racing pigeons, but argues that the word "temporary" should be interpreted to modify both the word "storage" and the word "housing." That is, Appellant

4

argues that the use category of "animal boarding facility or kennel" only covers the temporary housing or temporary storage of animals, and that it does not cover the permanent housing of animals. This interpretation, however, would lead to an absurd result, as, for example, a breeding kennel of ten dogs kept permanently on a property, where only the offspring are sold, would not be covered, although a boarding kennel where only five dogs were housed while their owners were away would be covered. The purpose of restricting this use category only to non-residential or agricultural neighborhoods evidently recognizes the potential for adverse effects resulting from the noise or odor that can result from the keeping of more than five domestic animals, regardless of whether any individual animals are on the premises on a temporary or a permanent basis. By its terms the definition does not distinguish by the size or type of the animals involved, but rather by whether the land, structure or facility is "designed and used" to house that number[2] of animals.

Accordingly, as some portion of Appellant's shed is designed and used to house the twenty racing pigeons, it falls within the use category of "animal boarding facility," which is not an allowed use in the R-1 zoning district. Moreover, regardless of whether it is an "animal boarding facility," as Appellant only received a zoning permit to construct a storage shed for the storage of household items, and not live animals, the use of the shed

_____

[2] The Court recognizes that people may keep smaller animals and birds as pets entirely within their houses, and may easily exceed five or more small animals such as some combination of cats, parakeets, gerbils, guinea pigs and the like. However, because the definition of "animal boarding facility" requires the facility, structure or land to be "designed" as well as "used" for the purpose of housing animals, we must note that this decision specifically does not address whether or at what point the keeping of any particular number of household pets or domestic animals (other than those covered by §725) within a residence would or would not be allowed as an accessory use to the residential use.

5

to house the racing pigeons also is beyond the scope of the use authorized by that permit.

Thus, summary judgment must be granted to the Village, upholding the second Notice of Violation, in that the use of an accessory building to keep more than four pigeons is not allowed within the definition of "animal shelter," and such a use is beyond the scope of the permit issued for the construction of that building as a storage building, and falls within the use category of "animal boarding facility," which is not an allowed use in the district.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED regarding Docket No. 169-7-06 Vtec; the Notice of Violation that is the subject of that appeal is hereby vacated. Appellants' Motion for Summary Judgment is DENIED in Docket No. 293-12-06 Vtec, and summary judgment is hereby GRANTED to the Village, upholding the Notice of Violation that is the subject of that appeal. This decision concludes both appeals.

Done at Berlin, Vermont, this 12th day of March, 2007.

_____
Merideth Wright
Environmental Judge