STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re Tasha Tudor & Family, Inc.      }
    Conditional Use Permit         }      Docket No. 112-6-09 Vtec
       (Appeal of Thomas Tudor)    }
}

Decision and Order on Motion to Remand

This is an on-the-record appeal filed on June 16, 2009, from a decision of the Development Review Board (DRB) of the Town of Marlboro, granting conditional use approval to Tasha Tudor and Family, Inc. to operate a Museum/Gallery and Retreat Facility.[1] Appellant Thomas Tudor owns an undivided partial interest in property adjacent to the project parcel; he is an attorney (not admitted in Vermont) who is representing himself in this matter. Appellee-Applicant Tasha Tudor and Family, Inc. is represented by Amy Tudor, who is not an attorney. The Town of Marlboro is represented by Paul S. Gillies, Esq.

Appellee-Applicant applied for conditional use approval of its operation of a museum/gallery and retreat facility on a 9.8-acre parcel of property known as "the Rookery," located at 299 Raven Road in Marlboro. The application initially proposed to limit the operation to the months of May through October, to have no more than 30 bus tours per calendar year, and to offer no more than two events or tours per day. In addition, the application proposed to continue to provide portable toilets for the tour participants, and to require that tour buses be parked on private property rather than on public roads, and that the engines be turned off rather than being permitted to idle.

---

[1] Section 205 of the Zoning Regulations seems to require site plan approval together with conditional use approval. There is no indication in the record that site plan approval was sought or obtained in or prior to the proceeding for this application.

1

Appellant has raised issues pertaining to the respective roles of the entity "Tasha Tudor and Family, Inc. as compared with that of an entity called "Tasha Tudor Museum"; issues regarding the authority of and procedures used by the DRB; issues regarding the legal status of Raven Road; and issues regarding whether the DRB adequately addressed potential problems from traffic to the site, including fumes, parking, traffic safety, and potential problems from pedestrians on the site, including trespass onto neighboring property.

The "conclusions" section of the DRB's decision simply stated that the application (or the application "as conditioned") will not have a undue adverse effect on four general requirements for conditional use approval found in § 204(5)(a), (b), (c), and (e), including on "the character of the area affected" and on "traffic on the roads and highways [in] the vicinity." The decision did not explain how the DRB reached those conclusions based on the evidence submitted.

In an on-the-record appeal, governed by V.R.E.C.P. 5(h)(1), the clerk or other appropriate officer of the DRB is required to transmit the papers and exhibits filed with the DRB, and to transmit a copy of the electronic recording of the proceedings before the DRB. That recording may serve without a transcript if the total elapsed time for all the recorded proceedings does not exceed twelve hours, see V.R.E.C.P. 5(h)(1)(A), but any party may order a transcript to serve as the record of the proceedings, pursuant to V.R.E.C.P. 5(h)(1)(B) and (C).

Regardless of whether the record is transcribed or not, it must be capable of being transcribed, that is, it must be adequate for the reviewing court to understand the evidence, including some means of identifying the witness who is speaking and what documents are being shown to the DRB, if any. See, e.g., In re: Application of Blakeman, No. 167-8-05 Vtec, slip op. at 2–3, n.1 (Vt. Envtl. Ct. June 19, 2006) (Wright, J.) ("To maintain on-the-record review, it is necessary that the recording equipment produce a recording that is capable of being transcribed."); In re: Appeals of Dunnett,

2

Nos. 132-8-96 Vtec & 133-8-96 Vtec, slip op. at 3 (Vt. Envtl. Ct. Aug. 28, 1997) (Wright, J.), aff'd sub nom. In re Dunnett, 172 Vt. 196 (2001) (In an on-the-record proceeding, the "reviewing court . . . must be able to tell from the record exactly what evidence was before the board.").

The Town volunteered to have the tapes transcribed. The first transcript contained a transcriptionist's note for the March 31, 2009 hearing that "[p]eople were too close to the microphone, which distorted their voice," and a transcriptionist's note for the April 6, 2009 hearing that "[p]eople were not positioned close enough to the microphone." Much of the testimony in the first edition of the transcript was attributed to an "unidentified female" or "unidentified male" speaker, and the transcript was replete with instances of the indication: "(inaudible)."

To avoid an unnecessary remand of the proceedings, the Court required the parties to attempt to correct the record, using the procedures provided in V.R.A.P. 10(e), made applicable to the Environmental Court by V.R.E.C.P. 5(h)(1)(A). By listening to the tapes while reviewing the transcript and her own notes, the Clerk of the DRB was able to identify most of the unidentified speakers, to correct some errors in the original transcript, and to replace some of the "inaudible" indications with text. The other parties did not provide any alternative or additional corrections to the transcript for the Court to consider.

Unfortunately, even the corrected transcript does not eliminate all the "inaudible" indications or "unidentified" speakers. Perhaps most importantly, when photographs or other documents are being shown to the DRB, there is no indication in the transcript as to which document or photograph is being spoken about by the witness. There are sufficient remaining "inaudible" indications even in the corrected transcript to make it doubtful whether the Court will be able to determine whether there is substantial evidence in the record as a whole to support the DRB's findings, conclusions, and conditions.

If the DRB's decisions contained more extensive findings and reasoning, or if it contained enough information to tell, for example, why the specific numbers of bus tours or retreats imposed by the DRB as conditions were considered by the DRB to have no undue adverse effect on traffic on the roads, or on the character of the area, it might have been possible to interpret the transcript in light of those findings or reasoning. The Vermont Supreme Court has cautioned that it is not the role of a court reviewing a decision on the record to "fill in the gaps left by [a] DRB's decision." Appeal of Leikert, Docket No. 2004-213, slip op. at 2 (Vt. Nov 10, 2004) (unpublished mem.) (remanding an on-the-record appeal to the DRB for more complete findings and conclusions and, if necessary, another hearing) (copy enclosed).

In the Leikert decision, the Vermont Supreme Court recognized that DRBs "are often made up mostly of lay people, many of whom have limited experience or training in adjudicative matters." Id. Nevertheless, the Court explained that "property owners are entitled to a decision that leaves them with an understanding of how a board's decision was reached based on the evidence submitted." Id.

Therefore, given the problems with the transcript, and in the absence of more extensive findings and reasoning in the DRB decision, it is prudent to order remand of this matter now. This will allow the DRB to conduct a hearing that produces an adequate transcript, and will also allow the DRB to consider in the first instance what is necessary in the way of findings and conclusions. It would not promote judicial efficiency to accept the partially reconstructed transcript and to require the parties to proceed to brief the merits at this time.

Because this matter is being remanded, the Court does not reach the other issues raised by the pending motions for summary judgment; those motions have become moot.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's motion for remand is GRANTED; the DRB decision is hereby vacated

4

and remanded, concluding this appeal. If any appeal is filed after the remanded proceedings, it should be filed with a new notice of appeal and will be given a new docket number; any request for waiver of the filing fee should make a reference to the docket number of the present appeal.

Done at Berlin, Vermont, this 23rd day of December, 2009.

_____

Merideth Wright
Environmental Judge