STATE OF VERMONT
SUPERIOR COURT, ENVIRONMENTAL DIVISION



In re Losier Variance Application    }        Docket No. 79-4-08 Vtec

## Decision on Cross-Motions for Summary Judgment

This matter arose after John and Paulette Losier ("Applicants") constructed a detached garage on their property, the easterly peak of which measures roughly thirty-five feet above the ground. The Town of Maidstone Zoning Administrator issued Applicants a notice of violation for constructing a building that exceeded the twenty-six-foot height limitation in the Maidstone Lake Zoning District ("Lake District"); Applicants then applied for a variance for their as-built structure. The Town of Maidstone Zoning Board of Adjustment ("ZBA") denied the variance request, and Applicants subsequently appealed to this Court.

Applicants are represented by Oliver L. Twombly, Esq.; the Town of Maidstone ("Town") is represented by William P. Neylon, Esq.; Interested Persons Brenda J. Tilton and Norman A. Vanshaw have also appeared in this appeal, representing themselves.

Now pending before the Court are two cross-motions for summary judgment. Applicants request that the Court summarily void the ZBA's decision as being rendered by an improperly constituted two-member ZBA, ultimately asking that their variance application be deemed approved. The Town argues in opposition that Applicants' motion is untimely, and has filed a motion for summary judgment requesting that Applicants' variance request be denied as a matter of law. The Interested Persons have chosen not to submit a memorandum in response to the pending cross-motions.

## Factual Background & Procedural History

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicants own Lot 51A on West Side Road in the Lake District of the Town. Their property is relatively narrow; it is about 260 feet deep, with approximately 100 feet of frontage on Maidstone Lake and about 50 feet of frontage on West Side Road. Applicants' property is also fairly steep, as it slopes easterly toward the Lake.

2.    Sometime before December 2006, Applicants submitted an application for a zoning permit, seeking approval to construct a retirement home on their lakeshore property.

3.    According to the permit application, Applicants' sought approval to construct two buildings: an L-shaped camp located near the lakeshore, and a detached garage located upslope. Applicants' proposed camp, which is not the subject of this appeal, would replace the property's existing camp; the two bedroom residence would sit in the same footprint as its predecessor.

4.    At issue in this appeal is the detached garage, which would be twenty-eight-feet square and would include a one-bedroom apartment on the upper level. It would have plumbing and electricity, but no cooking facilities.

5.    Although the zoning permit application form does not require an applicant to indicate the height of any proposed buildings, Applicants noted on their application that the detached garage was intended to be a story and one-half, with dormers. Drawings submitted as part of the application suggest that the detached garage would rise to a height of twenty-five feet above the building's foundation.[1]

6.    The Zoning Administrator approved the Applicants' application on December 22, 2006, and issued Zoning Permit No. 06122201. Underneath his signature, the Zoning Administrator included a reference to the height requirements in the Lake District, which limits the height of buildings to twenty-six feet. Accordingly, the Zoning Administrator noted: "REF: 26'/HEIGHT AS DEFINED IN ZONING HANDBOOK [ADOPTED ON] 7/8/2002."

7.    Applicants' construction timeline is somewhat unclear from the record. It appears that construction on the project site may have begun as early as October 2006, three months before the issuance of Zoning Permit No. 06122201. Applicants completed constructing the roof of the detached garage in January 2007, and the structure was fully enclosed and nearly complete by July 2007.

8.    The completed garage rises roughly twenty-five feet above its foundation, but because Applicants' property slopes downward as it approaches the Lake, the foundation on the easterly side of the building is exposed. As a result, the easterly peak of the garage's roof rises nearly thirty-five feet above the ground.

---

[1] Applicants argue that these drawings communicate Applicants' intent to construct a garage the peak of which measures 28'5" above the ground. The record does not support such a conclusion. Rather, the drawings indicate that the garage would rise only twenty-five feet above its foundation. The drawings depict a building 28'5" tall only when the foundation is included in the measurement.

2

9.     On July 6, 2007, the Zoning Administrator served Applicants with a notice of violation, which alleged that the easterly side of garage exceeded the Lake District's maximum height limitation. The Bylaws specify in § 203 a maximum allowable height of twenty-six feet "from ground to peak of roof," and the Zoning Administrator determined that the building's easterly peak was approximately thirty-six feet above the ground.

10.     Applicants thereafter submitted to the ZBA an application for a variance from the twenty-six-foot height limitation. The variance application is not included in the record thus far provided, but Applicants expressly asked for a variance and set forth the reasons for their request in a letter to the ZBA dated September 17, 2007.[2]

11.     Applicants do not dispute the need for a variance. Indeed, Applicants concede that the easterly peak of the garage measures 34'7" above the ground. Applicants are quick to point out, however, that the easterly peak is only 25'6" above the foundation.

12.     Meanwhile, Applicants proceeded with designing a septic system for the property, the location of which had not yet been determined. Once the garage had been sited, Applicants were limited in choosing a location for the septic system. Applicants represent that, due to State requirements, the only feasible location was the easterly side of the garage, between the newly constructed garage and the planned location of the camp. Applicants received State approval for their septic system on December 11, 2007, as evidenced by Wastewater System and Potable Water Supply Permit No. WW-7-2367. The record does not reveal the date on which the septic system was installed.

13.     On February 28, 2008, the three-member ZBA conducted a public hearing on Applicants' variance request, but they adjourned without reaching a decision on the application. Sometime after the February hearing and before the ZBA rendered its decision, one member of the ZBA resigned his position, leaving a two-member ZBA to act on Applicants' variance request.[3]

14.     On March 6, 2008, the two remaining ZBA members completed their deliberations, ultimately reaching a consensus to deny the Applicants' variance application. Applicants received notice of the variance denial by mail on April 7, 2008.

---

[2] The September 17 letter also communicates Applicants' desire to appeal the notice of violation, but nothing in the record indicates that Applicants took the proper steps to formally appeal the alleged violation. The record also fails to reveal whether the Town took any action on the notice of violation.

[3] The parties dispute when the third ZBA member actually resigned his position. However, the undisputed facts indicate that this member resigned prior to the ZBA rendering its decision on Applicants' application.

15. Applicants timely appealed the ZBA's decision to this Court on April 28, 2008, seeking approval of their variance application.[4]

16. Applicants provide no affidavits in support of their motion for a summary approval of their variance request. In their filings, however, Applicants contend that the as-built structure cannot be brought into compliance without a variance. Fill cannot be placed below the easterly peak without damaging the functionality of the septic system or obstructing vehicular access to the third and fourth garage doors on the easterly side of the garage; and the pitch of the roof cannot be changed without adversely affecting the roof's ability to shed snow. While Applicants maintain that the steepness of the property required an exposed foundation on the easterly side, Applicants provide no explanation as to why the property could not have been leveled prior to construction. They fail to explain why conditions on the property necessitated building a garage, with four garage doors and an apartment above, which rises nearly thirty-five feet above the ground on its downward, lake-facing side.

17. By previous pretrial motion filed June 1, 2009, Applicants requested this Court deem the variance application approved, arguing that the two-member ZBA was improperly constituted and therefore failed to render a valid decision on the application. See 24 V.S.A. § 4464(b)(1) ("[F]ailure of the panel to issue a decision within [45 days of adjournment] shall be deemed approval and shall be effective on the 46th day."). We declined to grant Applicants' previous motion, concluding that the deemed approval remedy was inapplicable to a situation where two members of the three-member ZBA resolved to deny the application in a timely fashion. In re Losier Variance Application, Nos. 79-4-08 Vtec & 233-10-08 Vtec, slip op. at 7–8 (Vt. Envtl. Ct. Nov. 5, 2009) (Durkin, J.). In short, we determined that "[a]pplying the remedy of deemed approval would directly contravene the doctrine's purpose and transform a negative decision into a positive one." Id. at 8. Having resolved all pretrial motions, the matter was scheduled to proceed to a hearing on the merits.

---

[4] In addition to the arguments addressed herein, Applicants also appear to contend that the Town authorized the construction of a building nearly thirty-five feet tall by issuing Zoning Permit No. 06122201. Not only do the facts suggest that, at best, the Town approved a 28'5" building, but this argument is also immaterial to the pending appeal. The matter currently before the Court involves Applicants' application for a variance, and the merits of the application are not impacted by Zoning Permit No. 06122201. In fact, Applicants concede that the peak of the garage measures 34'7" from the ground, and they acknowledge the need for a variance.

Applicants also appear to argue that the Town is engaging in selective enforcement of the Lake District's maximum height limitation. This argument is also immaterial to the pending appeal, as this is not an enforcement proceeding and Applicants did not preserve that additional issue in their Statement of Questions in this appeal.

4

18.     Shortly thereafter, Applicants requested a continuance of the merits hearing, which was granted by order on November 17, 2009 ("Scheduling Order"). The four paragraph Scheduling Order contained four directives: (1) Applicants were directed to submit the variance application by November 30, 2009; (2) the parties were directed to file a joint statement of material facts by the same date; (3) by December 4, 2009, the parties were directed to inform the Court of any dates that were unavailable for a rescheduled merits hearing; and (4) the parties were directed to file any remaining pretrial motions by December 30, 2009.

19.     Applicants then requested an enlargement of time, seeking additional time to comply with paragraphs 1 and 2 of the Scheduling Order. Applicants' motion was unopposed.

20.     This Court granted Applicants' request by order of December 2, 2009 ("Amended Scheduling Order"), and extended the deadline for paragraphs 1 and 2 to December 18, 2009. In addition, the Court changed the deadline for paragraph 3 to January 5, 2010. No reference was made to paragraph 4 concerning pretrial motions.

21.     In compliance with the deadlines established in the Amended Scheduling Order, Applicants submitted a list of unavailable dates, a statement of material facts, and Applicants' letter requesting a variance by December 18, 2009. Applicants then filed another pretrial motion on January 5, 2010, seeking a summary ruling that the ZBA's decision is void for failing to comply with 24 V.S.A. § 4460(b).[5] This motion is currently pending before the Court.

22.     Applicants' pending motion for summary judgment was filed after the December 30, 2009 deadline for pretrial motions, as established in paragraph 4 of the Scheduling Order and unaltered by the Amended Scheduling Order. However, Applicants filed the motion within the Amended Scheduling Order's deadline for paragraph 3, concerning availability disclosures.

## Discussion

Applicants built a detached garage, with an apartment above, on their lakefront property, the easterly peak of which measures roughly thirty-five feet above the ground. Applicants then requested a variance from the Bylaws' twenty-six-foot maximum height limitation, but a two-member constituency of the ZBA denied Applicants' request. Applicants thereafter appealed.

---

[5] Applicants pending motion is strikingly similar to their previous pretrial motion, which the Court already denied. See In re Losier Variance Application, Nos. 79-4-08 Vtec & 233-10-08 Vtec, slip op. at 7–8 (Vt. Envtl. Ct. Nov. 5, 2009) (Durkin, J.). In both motions, Applicants request that their variance application be deemed approved, but in their pending motion, Applicants provide a slightly different basis for applying deemed approval: 24 V.S.A. § 4460(b), which says that a "board of adjustment for a rural town or an urban municipality shall consist of not fewer than three nor more than nine persons." 24 V.S.A. § 4460(b).

Currently pending before the Court are two motions for summary judgment. Applicants seek a summary ruling that the ZBA's decision is void and the variance application is deemed approved. The Town has also filed a motion for summary judgment, arguing that Applicants' variance request must fail as a matter of law because they have not satisfied the variance criteria set forth in 24 V.S.A. § 4469(a)(1)–(5).

Our review of the pending cross-motions must begin with the reminder that summary judgment is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322; V.R.C.P. 56(c). "When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). We apply these standards to the issues raised by the pending motions.

## I.      The Validity of the ZBA's Decision

By their January 5, 2010 motion for summary judgment, Applicants request this Court to summarily void the ZBA's decision denying Applicants' variance request. Applicants argue that the two-member ZBA was improperly constituted pursuant to 24 V.S.A. § 4460(b) and, therefore, no ZBA was in existence when the decision was rendered. Applicants ultimately request that the variance application be deemed approved.

The Town first opposes Applicants' motion on the grounds that it was untimely filed. The Town contends that the Scheduling Order expressly set December 30, 2009 as the deadline for all pretrial motions, and that deadline was unaltered by the Amended Scheduling Order. Applicants' pending motion, which was filed on January 5, 2010, was therefore beyond the deadline for pretrial motions. While the Town is correct that the Amended Scheduling Order did not expressly extend the paragraph 4 deadline for pretrial motions, the Court believes that this was an error on its part, and for the following reasons, accepts Applicants' pending motion as being timely filed.

In the Amended Scheduling Order, the Court granted Applicants' request to extend the deadlines for paragraphs 1 and 2, which involved filing a statement of material facts and filing Applicants' variance application. Since pretrial motions would likely rely upon the information covered by paragraphs 1 and 2, the Court believed it was also necessary to extend the deadline

for filing pretrial motions. Rather than changing the deadline for paragraph 4, which concerned pretrial motions, the Court inadvertently changed the deadline for paragraph 3, which concerned disclosures of the parties' availability. The Court sincerely regrets this error. The Court intended to extend the deadline for filing pretrial motions to January 5, 2010.

Applicants filed the pending pretrial motion on January 5, within the Amended Scheduling Order's deadline for availability disclosures. Because the Court intended the January 5 deadline to apply to pretrial motions, rather than availability, we conclude that Applicants' motion was timely filed. We therefore proceed to the merits of Applicants' motion.

By their motion, Applicants seek a summary ruling that any decision by a two-member ZBA is void ab initio because a zoning board must have three members, and therefore, Applicants' variance application should be deemed approved. Indeed, our law requires that a "board of adjustment for a rural town or an urban municipality shall consist of not fewer than three nor more than nine persons." 24 V.S.A. § 4460(b). However, for the reasons stated below, we conclude that the remedy for failing to comply with § 4460(b) is not deemed approval of Applicants' then-pending variance request.

As we discussed at length in our November 5, 2009 Decision, our "Supreme Court has consistently declared that technical defects in the decision-making process do not warrant the application of deemed approval." In re Losier Variance Application, Nos. 79-4-08 Vtec & 233-10-08 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 5, 2009) (Durkin, J.) (citing cases). The doctrine of deemed approval is reserved for the narrow purpose of remedying "indecision and protracted deliberations" by the zoning board. Id. at 7 (quoting In re Newton Enters., 167 Vt. 459, 465 (1998)). Here, the parties do not dispute that the two remaining ZBA members resolved to deny Applicants' variance request.[6] Approving Applicants' application by operation of law would not implement the statutory purpose of deemed approval, but rather, it would transform a negative decision into a positive one. We are cautioned against such a result. See In re McEwing Servs., LLC, 2004 VT 53 ¶ 21, 177 Vt. 38. Accordingly, we again reject the application of the deemed approval doctrine to Applicants' variance request.

---

[6] We note here, for informational purposes only, that a board of adjustment can act upon the concurrence of the majority of the members of the board. In re Reynolds, 170 Vt. 352, 354–55 (2000); see also 24 V.S.A. § 4461(a) ("For the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of the members of the panel, and any action of the panel shall be taken by the concurrence of a majority of the panel."). A consensus by two members of the ZBA's three-member board satisfies this requirement.

7

By allowing its membership to fall below the statutorily required three members, the ZBA became noncompliant with 24 V.S.A. § 4460(b). The decision denying Applicants' variance request was therefore defective. But the remedy for such a defect is not deemed approval (a result that would be directly contrary to how the majority of the ZBA voted); the remedy is an appeal to this Court, where an applicant receives de novo review. See Newton, 167 Vt. at 466 (voiding the zoning board's decision as being reached by less than the required majority, but rejecting the application of deemed approval and directing this Court to review the merits of the permit application).[7]

In a de novo appeal, we review the application and supporting materials anew, as if no proceedings have taken place before the municipal panel. In re Killington, Ltd., 159 Vt. 206, 214 (1992) (citing In re Green Peak Estates, 154 Vt. 363, 372 (1990)). In this sense, the appealed-from decision is treated as a legal nullity; it is effectively voided by an appeal to this Court. See id. at 214–15 (explaining a de novo appeal) In a de novo appeal to this Court, an applicant is then given the opportunity to present new evidence and alternative reasons that support the approval of her zoning permit application. Id. at 215.

Here, Applicants have appealed the ZBA's decision, which denied their application for a variance. The Court will review anew, in this de novo appeal, the merits of Applicants' variance application without regard to the decision below. A decision below that is defective does not change this approach, and for all the reasons explained in our November 5, 2009 Decision, deemed approval does not apply to such a defect as is here.[8] Accordingly, we again **DENY** Applicants' request to apply the deemed approval remedy and proceed to the merits of Applicants' variance application.

---

[7] As an alternative to appealing an unfavorable, albeit defective decision, an applicant may ask the municipal panel for a continuance of the zoning hearing, which would then give an applicant the opportunity to present her application to a fully constituted zoning board.

[8] We note here that other jurisdictions vary their approach to this legal issue. Compare Stevenson v. Town of Kennebunk, 930 A.2d 1046, 1048–49 (Me. 2007) (concluding that the Kennebunk Board of Assessment Review could not legally act when it consisted of only two of the statutorily required three members) with U. S. Vision, Inc. v. Board of Examiners for Opticians, 545 A.2d 565, 568–69 (Conn. App. Ct. 1998) (concluding that a vacancy on the three-member Board of Examiners for Opticians did not deprive it from acting) and Hawaii Electric Light Co., Inc. v. Department of Land and Natural Resources, 75 P.3d 160, 172 (Ha. 2003) (concluding that "the total number of members on a board is not reduced by an abstention, resignation, or vacancy".) This is a debate in which this Court should not participate, since our Supreme Court has clearly established that the deemed approval remedy should not be applied in response to procedural defects, a conclusion that is in accord with two of the three jurisdictions our research reveals have addressed this legal issue. Newton, 167 Vt. at 466.

## II.    The Variance Request

On the merits, Applicants seek a variance from the height limitation in the Lake District because the easterly side of their as-built garage exceeds the twenty-six-foot "Maximum Height in feet from ground to peak of roof." Bylaws § 203 tbl. 203.03. The Town has moved for summary judgment, contending that no material facts are in dispute and Applicants' request for a variance must fail as a matter of law. The Town maintains that Applicants cannot meet any of the five statutory criteria required to secure relief by variance. See 24 V.S.A. § 4469(a)(1)–(5). As is explained more fully below, we agree in part and conclude that Applicants are not entitled to a variance.

Variances, by their very nature, contravene the goal of zoning. They are "individual exceptions to generally applicable rules of zoning, the purpose of which 'is to bring about the orderly physical development of the community.'" In re Mutschler, 2006 VT 43, ¶ 7, 180 Vt. 501 (mem.) (quoting In re Maurice Mem'ls, 142 Vt. 532, 535 (1983)). They act as "an escape hatch from the literal terms of an ordinance which, if strictly applied, would deny a property owner all beneficial use of his land and thus amount to confiscation." Id. (quoting Lincourt v. Zoning Bd. of Review, 201 A.2d 482, 485–86 (R.I. 1964)). As a result, a landowner has the steep burden of proving that a variance is warranted. L.M. Pike & Son, Inc. v. Town of Waterford, 130 Vt. 432, 435 (1972). A landowner must show that:

> (1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.
>
> (2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) Unnecessary hardship has not been created by the appellant.
>
> (4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

24 V.S.A. § 4469(a)(1)–(5).

Demonstrating the need for a variance is a high burden indeed, because a variance "must be based on a showing of conformance with each of the five statutory criteria." In re Dunnett, 172 Vt. 196, 199 (2001) (quoting Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989)). "If just one criterion is not satisfied the variance must be denied." In re Ray Reilly Tire Mart, 141 Vt. 330, 332 (1982). With this in mind, we turn to the record currently before the Court in order to determine whether Applicants can satisfy all five variance criteria.

The first variance criterion requires that unique physical conditions, such as a narrow lot or steep slopes, create an unnecessary hardship on the landowner. 24 V.S.A. § 4469(a)(1). The steepness and narrowness of Applicants' lot qualifies as such a hardship. Applicants' property slopes easterly toward the Lake, and the resulting decline contributes to the need for a variance because the exposed foundation on the easterly side causes that peak of the roof to exceed the Lake District's maximum height limit. The remaining sides of the garage comply with the Lake District's height requirements because the foundation is not exposed beyond a foot or so. The demonstrated hardship is therefore the result of unique physical conditions, not conditions generally created by the Bylaws; Applicants have satisfied criterion one.[9]

To satisfy the second variance criterion, Applicants must demonstrate that "[b]ecause of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw." 24 V.S.A. § 4469(a)(2). The variance must be "necessary to enable the reasonable use of the property." 24 V.S.A. § 4469(a)(2). For the reasons stated below, we conclude that Applicants cannot make either of these showings as a matter of law.

Applicants fail to present any evidence that their property generally, nor their new garage in particular, could not have been developed in conformance with the height requirements in the Lake District. Applicants have not provided any explanation as to why they had to cut into the slope so dramatically; had they not done so, they could have avoided exposing the easterly

---

[9] It appears, however, that Applicants have exacerbated this hardship by cutting into the slope of the bank, so that the easterly side of their new garage can accommodate the third and fourth garage doors in the basement of this structure. The slope cut causes a much greater portion of the garage foundation to be exposed than the adjacent northeasterly and southeasterly corners of the structure.

10

foundation in its entirety. Further, nothing in the record suggests that the apartment over the garage could not have been constructed in accordance with the twenty-six-foot height limitation. While it may be true that changing the pitch of the roof would affect its snow-shedding capacity, there is no evidence to suggest that the conditions on the property necessitated a structure that rises 34'7" tall. Applicants could have built a roof with the desired pitch had they not also constructed an apartment above the garage.

Applicants make compelling arguments that the nonconformity cannot now be corrected without substantial financial hardship, thereby implying that there is no possibility the property can be developed in conformance with the Bylaws. They argue that fill can no longer be used to raise the grade in front of the garage's nonconforming peak, because such fill would adversely impact the functionality of the property's septic system, which was placed immediately adjacent to the garage. Such fill would also cover the existing driveway spur between their two new structures, impeding access to the septic tank and hindering emergency vehicles from accessing their house. We sympathize with Applicants over their current predicament. However, the facts in the record before us seem irrefutable: Applicants created these predicaments by constructing their new, four-bay, three-story garage in contradiction to the Zoning Bylaws and not in strict conformity to the zoning permit they received.

We must review a variance application for an as-built structure as if the construction had not yet occurred. Rowe v. City of South Portland, 730 A.2d 673, 675 (Me. 1999) (examining whether a variance could have been granted pre-construction). Any hardship in correcting nonconformities resulting from construction is a consequence of proceeding with construction without proper authorization, and the difficulties in correcting the nonconformity are not acceptable reasons in justifying a variance. See D'Amato v. Zoning Bd. of Adjustment, 585 A.2d 580, 583 (Pa. Commw. Ct. 1991) ("Economic loss occasioned by owners who build structures which do not comply with the zoning requirements does not justify a variance."). Otherwise, an applicant could willfully develop a property in violation of the zoning regulations, and then justify the need for a variance by claiming that the development cannot be removed without substantial hardships. Here, Applicants proceeded without authority to construct a garage nearly thirty-five feet tall on its easterly side. It would be inappropriate to consider as justification for a variance any difficulty in now bringing the garage into conformance. Had Applicants complied with Zoning Permit No. 06122201 by constructing a garage that did not

11

exceed the height limitation (a limitation the Zoning Administrator expressly referenced in the permit), the need for a variance would not have materialized. Accordingly, Applicants have failed to demonstrate that there was no possibility of constructing the garage in strict conformity with the Bylaws.

More importantly, Applicants have not demonstrated that a variance is "necessary to enable the reasonable use of the property." 24 V.S.A. § 4469(a)(2). Applicants' property also contains a three-bedroom camp, which was authorized by Zoning Permit No. 06122201. The permit also authorized the construction of a height-compliant garage. Thus, Applicants already make reasonable use of their property without the requested variance. A thirty-five-foot tall detached garage, with a secondary apartment above, is not necessary for Applicants' to reasonably use their property. See, e.g., In re Dunnett, 172 Vt. 196, 200 (2001) (denying a variance because a reasonable use of the property existed without it); In re: Legrove and Paznokaitis Variance Application, No. 19-1-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. July 15, 2008) (Wright, J.) (denying a variance for a deck because a house was permitted for the property). Even when viewing the facts in a light most favorable to Applicants, we conclude that Applicants cannot satisfy variance criterion two.

Applicants' failure to satisfy criterion two necessitates denial of their variance application because "[i]f just one criterion is not satisfied the variance must be denied." In re Ray Reilly Tire Mart, 141 Vt. 330, 332 (1982). Therefore, we need not consider the remaining variance criteria to conclude that, even when viewing the undisputed facts in a light most favorable to them, Applicants' variance application must be denied as a matter of law. The record thus far provided reveals that Applicants have demonstrated neither the impossibility of constructing a garage in conformance with the Bylaws nor the necessity of a variance to enable the reasonable use of their property. In reaching this conclusion, we acknowledge the hardship Applicants must endure in bringing the easterly peak of their as-built garage into compliance with the Bylaws. However, the difficulty in rectifying a nonconformity is not a valid consideration when trying to justify the need for a variance. We are therefore compelled to **GRANT** the Town summary judgment and to **DENY** Applicants' variance request as a matter of law.

### Conclusion

For all the reasons more fully discussed above, we **DENY** Applicants' motion for summary judgment. In so doing, we conclude that the ZBA's decision was defective for failing

12

to comply with 24 V.S.A. § 4460(b), but the remedy for such a defect is a <u>de</u> <u>novo</u> appeal to this Court, not deemed approval.

On the merits of Applicants' variance application, we **GRANT** the Town's motion for summary judgment, concluding that Applicants cannot satisfy all five of the variance criteria as a matter of law, a conclusion we have reached even when viewing the material facts in a light most favorable to Applicants.

As a result of this decision, there is no need to proceed to trial.  A Judgment Order accompanies this Decision, which completes the current proceedings before this Court concerning this appeal.

Done at Berlin, Vermont, this 13th day of July 2010.


_____
Thomas S. Durkin, Environmental Judge