2006 VT 43

### In re Appeal of MUTSCHLER, Canning and Wilkins

[904 A.2d 1067]

No. 04-457

¶ 1. May 25, 2006. The Vermont Environmental Court granted applicant a variance from setback requirements for a proposed commercial building on an existing small lot. Neighboring landowners appeal, arguing that the court misapplied 24 V.S.A. § 4468(a)(5)[1] by granting a variance that does not represent the minimum variance that will afford relief and the least deviation possible from the applicable zoning bylaws and the town plan. We agree and reverse.

¶ 2. Applicant is a contractor seeking to relocate his contracting business from Massachusetts to the Town of Burke, Vermont. He currently maintains a home

---

[1] Effective July 1, 2004, 24 V.S.A. § 4468(a) was amended so that the relevant language of 24 V.S.A. § 4468 now appears, in nearly identical form, as 24 V.S.A. § 4469. 2003, No. 115 (Adj. Sess.), § 106. We will refer to § 4468, the statute in effect at the time of the decision currently on appeal.

in Burke and operates his business from his Massachusetts residence. He stores his tools and equipment in the basement of that residence, and generally completes all necessary woodworking on the job site. He now seeks to live full-time in Vermont and construct a "business location" for his company that consists of office space, a storage area, and a wood shop. To this end, he purchased a small parcel of land in Burke at the intersection of Kirby Road and Maple Road.

¶ 3. The roughly triangular parcel is approximately one-third of an acre in size, and is bounded on the north by Dish Mill Brook, on the east by neighboring property, and on the southwest by Kirby Road. The surrounding neighborhood is essentially residential in character, with a number of home occupations. At the time of the purchase, the lot contained a nonconforming blacksmith's shop. Applicant originally intended to renovate this shop for his own use, but found it to be beyond repair. He then planned to construct a two-story building with a basement on a new footprint. In this plan, the basement was set aside for storage space, the office and wood shop were on the first floor, and a three-bedroom rental unit was proposed for the second floor. Upon advice from his engineer that the on-site septic capacity was only sixty to ninety gallons per day — far short of the 420-gallon-per-day capacity the proposed residential unit would require — applicant modified his plan again and proposed a similarly-sized two-story building without a basement.

¶ 4. In this new plan, which was ultimately submitted to the zoning board of adjustment, the office was located on the second floor, and the storage space took up approximately one third of the first floor. The rest of the first floor was given over to the wood shop. In the shop, applicant proposed to install a drill press, a grinder stone, and other basic woodworking machinery, and he would not rule out the possibility of installing noisier machines, such as planers, shapers, and molders. The plans called for sliding doors on both sides of the wood shop to allow for the handling and processing of oversized lumber.

¶ 5. Within the town, certain uses are permitted as a matter of right, and certain uses require a conditional use permit. Town of Burke, Zoning Bylaws § 203 [hereinafter Burke Zoning Bylaws]. Applicant agrees that his proposed wood shop constitutes "light industry" under the bylaws.[2] Light industry is a conditional use requiring a minimum setback of one hundred feet from the front, side, and rear boundary lines. *Id.* § 203, Conditional Use Table, entry no. 22. Because the site of applicant's shop is only twenty-five feet from the rear and side boundaries of the property, and thirty-five feet from the front, applicant was required to obtain both a conditional use permit and a variance from the setback requirement.[3]

---

[2] Section 702 defines "light industry" as "[a]ny industrial use having not more than thirty (30) employees, occupying, not more than 15,000 square feet of floor and outdoor storage area in the aggregate and having no excessive noise, odor, glare, smoke, dust or vibration discernable at its property boundary." Burke Zoning Bylaws § 702(45).

[3] Section 203 also prescribes a two-acre minimum lot size for light industry. Though applicant's lot is far smaller than two acres, applicant was not required to obtain a variance from the area requirement. Section 301 of the bylaws provides an exemption from area requirements for existing small lots:

> Any lot in individual, separate and non-affiliated ownership from surrounding properties on the effective date of any

¶ 6. The board granted applicant's variance request, and neighboring landowners appealed to the Environmental Court. At the de novo hearing, neighbors challenged the inclusion of the wood shop in applicant's proposal, arguing that the shop was not the minimum variance necessary to afford relief to applicant and was likely to generate an unreasonable amount of noise. The court, in applying 24 V.S.A. § 4468(a), found that most of neighbors' concerns about the proposed shop could be addressed through the conditional use permitting process. The court also concluded that the proposal was the minimum necessary to afford relief because the lot "could not be used for a farm stand as that would have much more traffic than the proposed use." Accordingly, the court granted the variance. This appeal followed.

¶ 7. Variances have historically been employed as "an escape hatch from the literal terms of an ordinance which, if

---

zoning bylaws may be developed for the purpose permitted, *even though not conforming to minimum lot width requirements*, if such lot is not less than one eighth acre in area with a minimum width or depth dimension of forty feet.

Burke Zoning Bylaws § 301 (emphasis added). The basic purpose of the provision "is to provide that lots of sufficient size whose existence predates the enactment of zoning but whose size does not quite comply with the new zoning law will not go to waste unused." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 50, 527 A.2d 227, 228 (1986). The parties agree that applicant's lot qualifies under this provision. Thus, applicant was not required to obtain a variance from the minimum lot size requirement.

strictly applied, would deny a property owner all beneficial use of his land and thus amount to confiscation." *Lincourt v. Zoning Bd. of Review*, 201 A.2d 482, 485-86 (R.I. 1964). Variances, by their very nature, are individual exceptions to generally applicable rules of zoning, the purpose of which "is to bring about the orderly physical development of the community." *In re Maurice Mem'ls*, 142 Vt. 532, 535, 458 A.2d 1093, 1095 (1983) (quotations omitted). The traditional reluctance to grant variances as a remedy to zoning problems was seminally expressed by Justice Cardozo: "There has been confided to the board a delicate jurisdiction and one easily abused. Upon a showing of unnecessary hardship, general rules are suspended for the benefit of individual owners and special privileges established." *People ex rel. Fordham Manor Reformed Church v. Walsh*, 155 N.E. 575, 578 (N.Y. 1927).

¶ 8. The Legislature has chosen to limit the discretion involved in the granting of variances by establishing five criteria that must be met before a variance may issue:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning regulation in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with

the provisions of the zoning regulation and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That the unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, *will represent the minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan.*

24 V.S.A. § 4468(a) (emphasis added). The bylaws' variance provision includes verbatim the above criteria. Burke Zoning Bylaws § 806.

¶ 9. The permit applicant bears the burden of providing evidence sufficient to support a finding with respect to each of the five criteria. *L.M. Pike & Son, Inc. v. Town of Waterford,* 130 Vt. 432, 435, 296 A.2d 262, 265 (1972). The court must then find that each of the five criteria have been met, regardless of whether the variance is sought from use or area restrictions. *In re Ray Reilly Tire Mart, Inc.,* 141 Vt. 330, 332, 449 A.2d 910, 911 (1982). Although some jurisdictions apply a lesser standard of scrutiny to dimensional variances, see, e.g., *Matthew v. Smith,* 707 S.W.2d 411, 416 (Mo. 1986), we do not distinguish between variances

from use requirements and those from area requirements. See *Gadhue v. Marcotte,* 141 Vt. 238, 241, 446 A.2d 375, 377 (1982) (stating that, because of § 4468(a), the "claim that there is a less strict criterion for area or dimensional variances than for use variances has no merit"). Thus, "[i]f just one criterion is not satisfied the variance must be denied." *In re Ray Reilly Tire Mart,* 141 Vt. at 332, 449 A.2d at 911.

¶ 10. The crux of neighbors' argument is that the dimensional variances required for "light industry" — sixty-five feet from the front and seventy-five feet from the side and rear — are not the least deviation possible from the zoning regulations, and that applicant does not explain why a lesser variance would not afford relief. Specifically, neighbors argue that if applicant were to exclude the wood shop from his proposal, the remaining office and storage space would constitute a "professional office." The zoning bylaws define a "professional office" as a "[p]lace where the business of a commercial, industrial, service, or professional organization is transacted." Burke Zoning Bylaws § 702(67). As a professional office, applicant's proposal would require a variance of only fifteen feet from the side and rear, and forty-five feet from the front — much less than the variances required for light industry. See Burke Zoning Bylaws § 203 (specifying minimum setbacks for light industry and professional office uses). Neighbors argue that applicant did not adequately demonstrate why this option would not afford relief. We agree.

¶ 11. We have consistently held that variances justified in terms of personal convenience or maximizing the profitable use of property were not the minimum necessary for relief. See, e.g., *In re Maurice Mem'ls,* 142 Vt. at 537, 458 A.2d at 1096 (denying a variance from height restrictions that would have allowed renovation of a nonconforming granite

shed's roof without interrupting the normal course of business); *Sorg v. N. Hero Zoning Bd. of Adjustment*, 135 Vt. 423, 426, 378 A.2d 98, 101-02 (1977) (denying a variance for expansion of a hotel dining room where the applicant asserted only "that the dining facilities would be more attractive and comfortable if the dining room were enlarged"); *DeWitt v. Town of Brattleboro Zoning Bd. of Adjustment*, 128 Vt. 313, 321, 262 A.2d 472, 477 (1970) (denying a variance for expansion of a gasoline station where "[t]he only hardship referred to is that of continuing the operation in an outdated facility"). Applicant's explanations for inclusion of the wood shop fall squarely within this line of cases. At the de novo hearing, he admitted that his business has operated successfully to date without a dedicated wood shop, and that he was generally able to complete his woodworking needs on the job site. When pressed to explain the wood shop, he responded, "If I had a small shop set up, it would be just more efficient and easier to produce [woodworking projects]." When asked whether he had calculated the economic merits of including or excluding the wood shop, he simply said, "It's much more efficient if I keep everything together in one central location." While we do not dispute that applicant's business may run more efficiently with a dedicated wood shop, "variances were never intended to afford relief from inconvenience or to prevent against the potential of lost profits." *In re Maurice Mem'ls*, 142 Vt. at 536-37, 458 A.2d at 1096.

¶ 12. In this case, a professional office would require smaller setbacks and thus represent less deviation from the zoning bylaws, and applicant does not articulate an adequate explanation for why this lesser variance does not afford relief. To the contrary, the record reveals that the variance obtained by applicant would enhance the efficiency of his business, but not that his business would be unsus-tainable without a variance allowing light industry. We therefore conclude that the record is insufficient to support the court's conclusion that the variance granted is the "minimum variance that will afford relief and will represent the least deviation possible from the zoning regulation and from the plan." 24 V.S.A. § 4468(a)(5).

*Reversed.*