**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| **In re 316 Main Street, LLC** } | | **Docket No. 65-5-11 Vtec** |
| **Variance Application** } | | **(Appeal from Burlington DRB** |
| } | | **variance determination)** |
| } | | |

## Decision on the Merits

Applicant 316 Main Street, LLC ("Applicant") owns property in the City of Burlington, Vermont, at the address that its name indicates, that is improved with a multiple apartment residential dwelling. Applicant appeals a decision by the City of Burlington Development Review Board ("the DRB") denying its zoning variance request. The sole issue presented in this appeal is whether Applicant may be allowed to maintain an already-installed paved driveway that encroaches approximately three feet into the five-foot setback from its eastern property boundary line. When the parties were unable to resolve their dispute through negotiation, despite their best efforts, the Court proceeded to conduct a site visit and trial.

Appearing at the site visit and trial were Applicant's principal, Kristen P. Anderson, who was joined by Applicant's attorney, Mark G. Hall, Esq. The City of Burlington ("the City") was represented at both the site visit and trial by Kimberlee J. Sturtevant, Esq. and Kenneth Lerner, the City of Burlington Zoning Administrator.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.     Applicant's property at 316 Main Street ("the Property") is improved with a large residential building originally used as a single-family residence and now used as a six-unit residential apartment building. The structure's use as a multi-family dwelling dates back to the 1930s; several structural characteristics do not conform to the current zoning regulations.

2.     Applicant's property has been the subject of several prior permit proceedings and zoning violation allegations. While some of those prior proceedings are not material to the legal issues presented in the pending appeal, others are and thus we note them here:

a) Applicant previously applied for a zoning permit to add two residential apartments in the basement of the existing structure in order to have a total of six apartments in the building.[1] The DRB denied that application by its decision dated July 22, 2008. Applicant appealed the DRB's decision to this Court, and that appeal was assigned Docket No. 171-8-08 Vtec.

b) In its 2008 decision, the DRB based its permit denial upon a finding that the existing site improvements had "too many constraints to accommodate additional living space in the basement. These include tight constraints on parking in the driveway and around the building, the inability to find a reasonable location for the [trash] dumpster that is safe and healthy, and the difficulty of providing safe access for trucks to the rear of the property." In re 316 Main Street Request to Add Basement Apartments, Findings of Fact, at 3, ¶ 13 (City of Burlington Dev. Review Bd. July 22, 2008).

c) At the time of the DRB's 2008 decision, the Property included a gravel driveway parallel to the Property's eastern boundary. The driveway was approximately twenty-one feet wide, and a portion of the eastern edge of the driveway was used for parking. The driveway ran from the curb cut on Main Street along the eastern property boundary and to the rear of the property, where a six-bay garage was and is located, and also wrapped around the rear of the apartment building, in front of the rear garage. (This pre-existing driveway is shown on a site map admitted at trial in the current docket, Docket No. 65-5-11 Vtec, as Exhibit 3. As shown on Exhibit 3, the eastern edge of the Main Street curb cut lined up with the eastern edge of the twenty-one-foot-wide gravel driveway.)

d) As noted on Exhibit 3, Applicant's principal (Ms. Anderson) understood, at the time that Applicant applied for approval to develop additional basement apartments, that the eastern edge of Applicant's twenty-one-foot-wide gravel driveway was five feet from the side yard property boundary shared with the neighbor to the east.

e) As Applicant's appeal of the DRB's denial of its application to develop additional basement apartments proceeded to trial, the parties, with the help of a mediator, reached a voluntary resolution that provided Applicant with a permit to create two additional apartments. The parties signed their Settlement Agreement on February 9, 2009 and filed the agreement with the Court on June 11, 2010. (A copy of the parties' Settlement Agreement was admitted at trial in this appeal as Exhibit 2.)

f) As part of their Settlement Agreement, the parties agreed that Applicant would install a paved driveway in the same area as the pre-existing gravel driveway. Exhibit 2 at 2, ¶ 2(D). That is, the parties agreed that "[t]here will be 18-foot wide paving in an area extending from the southeast corner of the [apartment] building to the Main Street intersection. Paving will be 20-feet in width from that point back to the north and meet five-foot side and rear setback requirements." Id.[2]

---

[1] This permit application was preceded by a threatened zoning enforcement action based on the fact that work to convert the basement to add up to three residential bedrooms in two new apartments began without permit authority. Those actions ultimately led to an agreement that only two one-bedroom apartments would be created in the basement and the remaining basement area would not be used as residential space.

[2] Another site plan, labeled as "Revised Site Plan" and marked as Exhibit 1 and attached to the Settlement Agreement (trial Exhibit 3), shows the driveway as having a width of twenty-one feet rather than eighteen to twenty feet. The slight discrepancy between the width indicated in the Settlement Agreement and that indicated in the site

g) The Settlement Agreement also required Applicant to complete a survey of the Property, with the particular goal of discerning the location of the Property's eastern boundary. That survey revealed that the eastern property boundary was approximately ten feet closer to Applicant's apartment building than originally recognized by the parties.

h) Ms. Anderson testified that, after the survey was completed, she was shown an iron pin approximately one foot from the northeastern corner of the six-bay garage. During her trial testimony, Ms. Anderson drew the approximate location of this iron pin on a copy of the prior site plan; the site plan with her iron pin marking was admitted at trial as Exhibit 3(a).

i) As a consequence of the boundary line corrections that the survey prompted, the parties sought to revise some terms of their Settlement Agreement, specifically in relation to the width of the driveway. On June 11, 2010, the parties presented a proposed Order to the Court, with attached exhibits, which the parties represented reflected their revised settlement terms. The Court adopted and issued that Order on June 15, 2010. (A copy of the Court's June 15, 2010 Order was admitted as Exhibit 1 at the trial in this appeal.) Pursuant to paragraph 8 of that Order (Exhibit 1, at 4), the Court directed the following:

> *Paving*: the driveway and parking spaces will be paved as shown on Exhibit 1 [attached to the 2010 Order[3]]. Paving of the driveway shall be limited to the setback, that is, it shall not encroach into the five foot side and rear yard setbacks. There shall be curbing around the edges of the paved surfaces to prevent encroachment onto the grass areas, except for the eastern side of the driveway which shall be striped with yellow paint, or shall include another barrier acceptable to the City. By May 1, 2010, Owner shall reseed with grass the area along the driveway from the edge of the pavement to the property line. Owner shall maintain the grass areas of the property and reseed as necessary to maintain the grass areas.

3. After the Court adopted and issued the June 15, 2010 Order, Applicant contracted to have the paving completed. The paving contractor installed a paved driveway, but it was not eleven feet wide, as directed by this Court's June 15, 2010 Order. Instead, the contractor installed a sixteen-foot-wide driveway, which essentially brought the new driveway adjacent to the eastern property boundary and within the entire five-foot side yard setback.

4. No clear explanation was provided at trial for why Applicant installed a sixteen-foot paved driveway instead of a driveway with the width agreed to by the parties and ordered by the Court. Applicant's attorney offers a summary of Ms. Anderson's

plan attached to the Agreement was not explained at trial. However, we do not understand this discrepancy to be material to our analysis of the legal issues raised in the pending appeal.

[3] Exhibit 1 to the 2010 Order shows an eleven-foot-wide paved driveway running from Main Street to the rear of the property.

testimony in his Post-Trial Memorandum by stating that Applicant "simply misapprehended the impact on the property of narrowing the driveway to 11 feet." (Applicant's Post-Trial Memorandum 5, filed Dec. 29, 2011.).

5.    In any event, Applicant asserts that the unique circumstances and unique physical layout of the Property, including the pre-existing apartment building and the proximity to the eastern property boundary line, requires a paved driveway wider than eleven feet.  Ms. Anderson credibly testified about the historical use of the driveway, the manner in which both the garage and Main Street curb cut encroach into the side yard setback, and the practical reality that, if the driveway is only eleven feet wide, tenants and visitors to the property will simply drive on the setback area.

6.    Applicant proposes to have the installed paved driveway reduced to fourteen feet in width, thereby allowing for a two-foot-wide grass setback area to be maintained between the pavement and the eastern property boundary line.

7.    The Court finds Ms. Anderson's testimony as to the necessity for a wider driveway credible.  Because the driveway is intended to serve six residential apartments, some units having more than one bedroom, the driveway must serve consistent traffic, including from tenants, fuel and other delivery vehicles, and trash disposal haulers.  Ms. Anderson convincingly provided one example of this necessity with photographs of the trash hauler's truck barely fitting between the apartment building and the illustrated eleven-foot edge of the driveway.  The images show that the truck had to come within inches of the side of the apartment building in order to stay within the eleven-foot demarcation and that the truck may not have been able to pass the steps that extend from the rear of the building into the driveway.

8.    The Court finds it difficult to accept the suggestion by the City's witness that Applicant could either contract with a trash hauler that has a smaller truck or use smaller, individual trash receptacles.  What will more likely occur, if Applicant were required to reduce the paved driveway to eleven feet, is that tenants and visitors, including trash haulers, will ignore the edge of the paved driveway and simply drive onto the grass area within the five-foot side yard setback.

9.    If the paved driveway is limited to eleven feet, a vehicle cannot remain on the pavement and still access the eastern-most bay in the garage located to the rear of the property.  The eleven-foot-wide pavement also will not align with the pre-existing curb cut onto Main Street; a portion of the curb cut would line up with the grass setback

4

area. This misalignment will serve as a visual cue encouraging vehicle drivers to travel onto the unpaved, grass setback area where the prior gravel driveway once was.

10. Sometime in 2011, Applicant sought a variance from the DRB for authority to maintain a fourteen-foot-wide paved driveway on the Property. This proposal would represent a seven-foot reduction from the width of the pre-existing driveway, although it would also represent a three-foot increase in the width agreed upon by the parties and ordered in the prior appeal (Docket No. 171-8-08 Vtec). Applicant proposes a fourteen-foot-wide paved driveway that would encroach three feet into the five-foot side yard setback.

11. The DRB denied Applicant's variance request, rendering adverse findings on nearly all of the variance criteria. See In re 316 Main Street Variance Request, Findings of Fact (City of Burlington Dev. Review Bd. Apr. 6, 2011). Once the DRB denied Applicant's variance request, Applicant filed an appeal with this Court.

## Conclusions of Law

The pending variance application presents three principal legal issues. There is, of course, the issue faced by all variance requests: whether an applicant can fulfill its burden of proving conformance with all five variance criteria. See 24 V.S.A. § 4469 and the City of Burlington Comprehensive Development Ordinance (Jan. 28, 2011) §§12.1.1(a)–(f) ("the CDO").[4] Applicant also argues that it does not need to obtain variance approval because its proposed project is merely a reduction in a pre-existing non-conformity. The City, conversely, argues that the unique procedural history for the development of this Property bars Applicant from seeking and obtaining variance approval. We address the latter two issues before turning to the variance criteria.

### I. Does Applicant Need Variance Approval?

Applicant suggests that its application is more appropriately characterized as a request to reduce a pre-existing non-conformity, rather than a variance application, and, thus, that it does not need variance approval. Applicant bases its suggestion on the fact that its current proposal will reduce the original twenty-one-foot-wide driveway to fourteen feet, thereby reducing the non-conformity.

However, the legal issue of reducing the non-conformity was already decided in this Court's prior proceedings. In its June 15, 2010 Order, when the Court approved

---

[4] Burlington's CDO adds a sixth variance criterion: "The variance, if granted, will not result in either the extension of a non-complying situation or allow the initiation of a nonconforming use of land." CDO § 12.1.1(f).

5

the parties' revised Settlement Agreement in Docket No. 171-8-08 Vtec, this Court required that the driveway be reduced from the pre-existing twenty-one feet to the equivalent of eleven feet, thereby requiring the existing non-conformity to cease. Section 4472 of Title 24 of the Vermont Statutes Annotated bars us from ignoring the final determinations made in that prior proceeding. See 24 V.S.A. § 4472(d) (providing that upon the failure of any party to appeal an adverse decision, all parties "shall be bound by that decision or act . . . and shall not thereafter contest [it]."). We conclude that the July 15, 2010 Order of this Court addressed the legal question Applicant attempts to raise now—the question of whether Applicant may construct improvements that reduce a non-conformity existing prior to the July 15, 2010 Order of this Court—and therefore conclude that the application before us concerns a variance request, not a request to revisit that question.

## II. **Does the Parties' Settlement Bar the Pending Variance Application?**

This Court's June 15, 2010 Order, which reflected the parties' revised settlement terms, required that Applicant's paved driveway not encroach into the five-foot side and rear yard setbacks. (Exhibit 1, at 4). Thus, the 2010 Order effectively required that Applicant install an eleven-foot paved driveway because paving anything over eleven feet would result in the failure of Applicant to comply with the setback requirements. Applicant, however, installed a sixteen-foot paved driveway that encroached into the entire five-foot side yard setback. Applicant now seeks a permit to develop a fourteen-foot driveway, seeking variance approval to encroach three feet into the five-foot side yard setback.

The City asserts that the finality rule of 24 V.S.A. § 4472 bars any consideration of the pending variance application. Section 4472(d) provides that, upon the failure of any party to appeal an adverse decision to either the appropriate municipal panel or this Court, all parties "shall be bound by that decision or act . . . and shall not thereafter contest [it]." 24 V.S.A. § 4472(d). Thus, the City essentially argues that, because Applicant did not appeal this Court's June 15, 2010 Order requiring an eleven-foot driveway, that Order is now final and cannot be considered in this appeal.

By seeking to change the permitted driveway paving area from eleven feet to fourteen feet, Applicant is essentially seeking to modify conditions found in this Court's June 15, 2010 Order. While unappealed zoning determinations may not be

6

collaterally attacked, "this rule of finality is tempered by flexibility built into the system." In re Hildebrand, 2007 VT 5, ¶¶ 11–13, 181 Vt. 568 (mem.) (applying the "flexibility vs. finality" balancing test in a municipal zoning proceeding); see also In re Stowe Club Highlands, 166 Vt. 33 (1996) (establishing the "flexibility vs. finality" balancing test and applying it to state land use Act 250 proceedings). The Vermont Supreme Court has made clear that "the central question [in applying a 'flexibility vs. finality' test] . . . is not whether to give effect to the original permit conditions, but under what circumstances those permit conditions may be modified." Hildebrand, 2007 VT 5, ¶ 7 (quoting Stowe Club Highlands, 166 Vt. at 34).

In Hildebrand, the Vermont Supreme Court adopted the Stowe Club Highlands test to determine when modifications to permit conditions are appropriate in municipal proceedings. See Hildebrand, 2007 VT 5, ¶ 13 ("Because the competing interests in this case are so similar to those in Stowe Club Highlands, the Environmental Court reasonably used the Act 250 standards in deciding this case."). Permit conditions may be modified when there are "(a) changes in factual or regulatory circumstances beyond the control of a permittee; (b) changes in the construction or operation of the permittee's project, not reasonably foreseeable at the time the permit was issued; or (c) changes in technology." Id. ¶ 7 (quoting Stowe Club Highlands, 166 Vt. at 38).

We conclude that changes in the functional operation of the Property's driveway encourage flexibility and allow us to consider Applicant's variance request rather than foreclosing that review by a strict adherence to finality. Specifically, we find credible Applicant's assertion that, in the course of the prior litigation, its principal, Ms. Anderson, "simply misapprehended the impact on the property of narrowing the driveway to 11 feet." (Applicant's Post-Trial Memorandum 5, filed Dec. 29, 2011.) There was evidence presented at trial, including in the form of the prior site plans, showing how restricting the new driveway to eleven feet would make one of the garage bays unusable if drivers were expected to remain on the pavement. The evidence also indicates that delivery and trash haul trucks that regularly visit the property could not safely access the rear of the property while remaining on an eleven-foot-wide driveway. Thus, we conclude that the maintenance of an eleven-foot-wide driveway on this

Property[5] would result in drivers, including tenants and visitors, disregarding the driveway's limits and choosing to drive over the grass setback area instead of remaining on the paved driveway.

These implications of narrowing the driveway's width were not revealed until after Applicant installed the paved sixteen-foot driveway and the parties considered the implications of narrowing it to an eleven-foot width. Thus, there was a change in the operation of the Applicant's proposed project that was not reasonably foreseeable at the time the permit was issued. See Hildebrand, 2007 VT 5, ¶ 7 (quoting Stowe Club Highlands, 166 Vt. at 38). That change in the driveway's functional operation encourages the flexibility that the Supreme Court discussed in Hildebrand for municipal zoning proceedings. Although that flexibility does not justify an automatic approval of Applicant's variance request, it does allow this Court to review that request. We therefore proceed with that variance analysis.

### III. **Variance Criteria**

We turn now to examining whether Applicant's proposal meets the criteria for variance approval. Zoning provisions, including the establishment of setback restrictions, are the embodiment of a community's established plan for how development should proceed within their municipality. See In re Tyler Self-Storage Unit Permits, 2011 VT 66, ¶ 13. However, our Legislature has also recognized that some flexibility must be allowed for reasonable development, even when a deviation from established zoning requirements will occur. These deviations are referred to as variances, and may only be allowed in very limited circumstances. See 24 V.S.A § 4469; see also In re Maurice Mem'ls, 142 Vt. 532, 535 (1983) (stating that variances, by their very nature, are individual exceptions to generally applicable rules of zoning, the purpose of which "is to bring about the orderly physical development of the community" (citing Vermont Brick & Block, Inc. v. Village of Essex Junction, 135 Vt. 481, 483 (1977))).

---

[5] The City provided credible evidence at trial that some permit-approved residential driveways are as narrow as seven feet. Mr. Lerner credibly testified that he safely uses a narrow driveway at his single family residence and follows a common practice of wheeling his trash containers to the curbside for pickup. However, the City offered no evidence that a six-unit residential apartment building in Burlington uses such a narrow driveway, nor that owners or occupants of a multi-unit residential apartment building wheel the standard metal trash dumpsters out along a driveway for pickup. In fact, the Court is not aware of the ability to safely move or tip a metal dumpster, similar to that used at the Property, except with the use of a trash truck similar to that shown in Applicant's Exhibits 5(a)–(f).

Some commentators have opined that the statutory criteria for variances are so restrictive that, if rigidly adhered to, no variance should be granted. Zoning Variance Administration in Vermont, 8 Vt.L.Rev. 371 (1983). But even this note commentator concluded that because variance determinations are so reliant on varying facts, "[t]he better approach is to permit local flexibility . . . ." Id. at 405. We complete our review of the statutory variance criteria with that caution of flexibility in mind.

As noted above, the applicable CDO provisions mirror the five variance criteria from 24 V.S.A § 4469, with an added sixth criterion. We therefore track our variance review to the CDO provisions. For a variance request to be granted, the CDO requires that an applicant show, in pertinent part, that (a) there are unique physical circumstances or conditions existing on the subject property that cause unnecessary hardship and are not those generally created by the provisions in the CDO; (b) because of such physical circumstances or conditions, there is "no possibility that the property can be developed in strict conformity" with the CDO and a variance is therefore necessary "to enable the reasonable use of the property"; (c) the applicant did not create the unnecessary hardship; (d) the variance will not alter "the essential character of the neighborhood . . . substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, nor be detrimental to the public welfare"; (e) the variance will represent the minimum and least deviation possible from the CDO; and (f) the variance will "not result in either the extension of a non-complying situation or allow the initiation of a nonconforming use of land." CDO, § 12.1.1(a)-(f). For a variance application to succeed, all six criteria must be met; an adverse conclusion under just one of the variance criterion must result in a denial of the variance request. See In re Mutschler, Canning and Wilkins, 2006 VT 43, ¶ 9, 180 Vt. 501.

With this heightened burden in mind, we review the applicable CDO provisions in light of the facts revealed at trial. For the reasons detailed below, we ultimately conclude that Applicant has made a sufficient showing to satisfy all variance criteria. We therefore **GRANT** the requested variance, with applicable conditions that are listed below.

### a. Unique physical circumstances or conditions

The physical circumstances and conditions that exist concerning Applicant's eastern property boundary—the narrowness of the space between the pre-existing

apartment building and the eastern property boundary line that only became evident after the paving was installed—provide a unique necessity for the requested variance. The narrowness of space for a driveway is unique to Applicant's property in that no evidence was presented at trial that other neighborhood lots share this issue: an inability to include a safe driveway serving buildings pre-dating the City's setback regulations while respecting those setback limits. The setback regulations are not the culprit here, but rather the insufficiency of an eleven-foot driveway where a twenty-one-foot-wide driveway once existed and the common misunderstanding by the parties and abutting neighbors of the eastern property boundary location.

To now restrict the paved driveway to the limits of the re-aligned side yard setback will create a curious alignment among the driveway, the garage, and the Main Street curb cut. As a practical matter, tenants and visitors are likely to ignore the limits of an eleven-foot-wide paved driveway and thus prevent the maintenance of the setback area. This practice will degrade the definition between paved driveway and grass setback.

For these reasons, we therefore conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(a).

**b. Possibility that Property can be developed in conformity with setbacks**

For similar reasons, we conclude that, even though the parties previously agreed, in their revised Settlement Agreement, to a paved driveway that could be limited to the setback limits, a driveway of only eleven feet in width will be impractical for servicing the six-unit residential apartment building. This inability to conform to the side yard setback is unfortunate, but if Applicant is allowed the requested three-foot encroachment into the side yard setback and required to maintain a demarcation between the driveway and the grass setback area, a reasonable use of the property can be maintained. We therefore conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(b).

**c. Hardship not created by Applicant**

The historical use of this Property evidences that the narrowness of space between the pre-existing apartment building and the actual, versus perceived, property boundary line predates Applicant's title to this Property by years, if not decades. The curb cut, garage, and established use of the property have contributed to a misunderstanding of where the property boundary line lies. The neighbors to the

east of the Property were not identified to the Court at trial, did not appear in these proceedings, and appear to not be concerned with this matter, even when the pre-existing gravel driveway may have intruded onto their property. For these reasons, we conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(c).

### d. Variance will not alter the essential character of the neighborhood

The driveway improvements Applicant proposes, even though representing a side yard setback encroachment, will not alter the essential character of this neighborhood for two principal reasons. First, the gravel driveway that had existed at this property for years, perhaps decades, was much wider and less defined. Second, the proposed driveway will respect a portion of the side yard setback and provide greater visual alignment among the driveway, the garage, and the Main Street curb cut than an eleven-foot driveway that respects the actual location of the eastern property boundary. The proposed driveway, once installed and with maintenance conditions imposed, will provide an improved symmetry to the neighborhood along this section of the City's Main Street. We therefore conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(d).

### e. Variance represents the minimum and least deviation possible

The proposed fourteen-foot driveway will encroach into the setback by three feet, a modest amount in light of the encroachment by the driveway that historically existed on the property. It will provide definition to both the driveway and the remaining setback. Most importantly, the proposed driveway will afford the minimum width necessary for tenants and visitors, including delivery trucks and trash haulers, to safely enter and exit the property while staying within the paved width of the driveway. We therefore conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(e).

### f. Variance will not result in an extension or initiation of a non-conformity

The proposed driveway will not extend a prior, or initiate a new, non-conformity beyond non-compliance with the setback limit for which the variance is sought. Rather, the improvements will provide needed definition to the limits of the driveway and grass setback area that are currently lacking and would not exist with the installation of an eleven-foot driveway. The proposed driveway will reinforce the neighborhood characteristics that the zoning regulations seek to preserve. We

11

therefore conclude that Applicant has satisfied the variance criterion in CDO § 12.1.1(f).

## Conclusion

For the reasons discussed above, we conclude that Applicant has satisfied all criteria from CDO § 12.1.1(a)–(f) and is therefore entitled to its requested variance. Our granting of this variance is conditioned upon the following:

1. Applicant shall cause a revised plan for the Property to be prepared and filed with the City of Burlington Zoning Administrator, delineating the eastern property boundary line pursuant to a survey prepared by a licensed surveyor and showing the driveway encroaching into the eastern side yard setback by no more than three feet in any one location.
2. Applicant shall cause the pavement on the existing driveway to be cut so that no portion of the driveway encroaches into the eastern side yard setback by more than three feet in any one location.
3. Applicant, and its successors and assigns, shall install and maintain curbing around the edges of all the paved surfaces to prevent encroachment onto the grass areas, except for the eastern side of the driveway which shall be striped with yellow paint, or shall include another barrier acceptable to the City of Burlington Zoning Administrator if the striping proves not to convince tenants and visitors to the Property to maintain their vehicles only on the paved areas. Applicant shall reseed with grass the area along the driveway from the edge of the pavement to the eastern property line. Applicant, and its successors and assigns, shall maintain the grass areas of the property and reseed as necessary to maintain the grass areas.
4. All other provisions of this Court's Order of June 15, 2010, as well as prior determinations by the DRB relating to this Property, not superseded by this Decision and the accompanying Judgment Order, shall remain in full force and effect.

This matter is remanded to the City of Burlington Zoning Administrator solely to complete the ministerial act of issuing a zoning permit that incorporates the terms of this Decision.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court concerning the pending application.

Done at Newfane, Vermont, this 27th day of June 2012.

_____

Thomas S. Durkin, Environmental Judge