Filed 04/04/25

VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 24-ENV-00043

| | |
|---|---|
| **Honos Real Estate, LLC Variance Denial** | **DECISION ON MOTIONS** |

This is an appeal of a May 2, 2024 Town of Castleton (Town) Development Review Board (DRB) decision denying Honos Real Estate, LLC's (Applicant) variance request to allow for the separation of two previously merged parcels of land located off Route 4A West in Castleton, Vermont (the Property).[1]  Presently before the Court are the parties' cross-motions for summary judgment.

In this matter, Applicant is represented by Sean Dillon, Esq.  The Town is represented by Merrill Bent, Esq.

### Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2).  When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Comm'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

### Factual Background

We recite the following facts solely for the purposes of deciding the pending cross-motions. These facts do not constitute factual findings because factual findings cannot occur until after the Court conducts a trial.  Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

With respect to the pending cross-motions, the parties have submitted a stipulated set of undisputed material facts with associated exhibits and supporting documentation in support of both motions.  The Court commends the parties for reaching such a stipulation that allows the efficient

---

[1] Specifically, the variance is needed for the rear setback and minimum lot size requirements.

adjudication of the pending motions and the matter before the Court. Further, the Court has reviewed the stipulation and attached exhibits and concludes that the stipulated-to facts are adequately supported. As such, the Court adopts the party's stipulated statement of undisputed material facts herein. For ease of reference, the stipulated facts are verbatim restated follows:

1. Appellee Town of Castleton is a Vermont municipal corporation, which has a Zoning Ordinance duly enacted pursuant to 24 V.S.A. Ch. 117 (Ordinance), attached as Exhibit 1.

2. The Applicant, Honos Real Estate, LLC (Honos), owns a 2.37-acre parcel of land at 205/177 Rt. 4A in the Town of Castleton, Vermont, identified as Parcel #43-051-01 ("Property"), upon which it operates a commercial self-storage enterprise, with six existing storage buildings. There is also an existing residential structure on the Property. A map showing the Property with improvements is attached as page 3 of Exhibit 2 identified below.

3. The Property is situated in the Village Commercial (VC) District of the Town, which has a minimum lot size of 20,000 square feet. Ex. 1, Art. II, Sec. 201(E).

4. Honos requested a variance on February 5, 2024, for Parcel #43-51-01 as set forth in its application dated January 26, 2024, attached as Exhibit 2.

5. The variance sought would permit the division of the Property into two parcels: one commercial lot upon which all of the Applicant's existing storage buildings with storage units within each building are situated, and a second, non-conforming residential lot with the existing residential structure. The Variance was denied by the DRB on May 2, 2024, attached as Exhibit 3, and this appeal followed.

6. Prior to 2023, the Property existed as two separate lots: (1) a 1.37-acre lot (parcel #53-51-02); and (2) a 1.0-acre lot (parcel # 43-51-1).

7. The two lots were merged with the approval of Applicant's applications for Permit 8276 and 8275. Permit applications attached as Exhibit 4.

8. The permits were approved by the Castleton Development Review Board (DRB) on July 3, 2023, which decision is attached as Exhibit 5.

9. The permits as approved by the DRB authorized the removal of a building and office and the construction of three self-storage buildings that had a combined total square footage of 9,650 square feet. The approved permits did not contemplate the removal of the existing residential structure. Ex. 5.

10. The two proposed buildings that were going on the approximately 1.0-acre parcel totaled 8,100 square feet. With the existing 2,400 square foot house and shed the total coverage would have

2

been 10,500. The coverage of the existing 43,560 square foot lot would have then been 24% instead of the maximum allowed of a 20% max coverage for the district. Had the lots not been merged, then Applicant's proposed construction would have exceeded the coverage maximum under the Ordinance, and would not have been permitted. See Ex. 5; Ex. 1 Ordinance, Article V (Table). But the coverage of the proposed residential lot is within the maximum amount and so is the coverage of the proposed commercial lot.

11. The removal of the building and construction of the three new buildings have been completed.

12. The Applicant now seeks to divide the Property into two separate parcels again: (1) an 11,836.37 square foot (0.27-acre) residential lot with the existing residential structure, and (2) a 91,595.42 square foot (2.10-acre) commercial lot with the self-storage operation in order to isolate the different uses so that the residential structure can be sold to a third party to be used as a home.

13. The size of the residential lot as proposed by the Applicant does not meet the 20,000 square foot minimum, nor does it meet the rear yard setback requirements for a conforming lot required under the Ordinance, creating a nonconforming lot. Because of the nonconformity that would result from its subdivision, Applicant requested a variance so that the residential lot and use can be separated and sold.

14. The footprint(s) of the existing buildings on the residential lot and commercial buildings on the commercial lot do fall below or are within the required 20% maximum allowed for lot coverage of all buildings within the VC District in relation to the size of the respective proposed lots. See Ex. 1, Art. V (Table); Ex. 2.

15. The creation of the proposed nonconforming residential lot requires a variance.

16. An overhead view of the current neighborhood is attached as Exhibit 6.

### Discussion

The sole Question before the Court is whether Applicant is entitled to a variance. Applicant's Revised Statement of Questions (filed Aug. 30, 2024).

The Legislature has identified five criteria which must be met in order for an applicant to be entitled to a variance. 24 V.S.A § 4469(a). The Town has adopted those criteria in Ordinance § 1207(A). The criteria are:

> (1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally

created by the provisions of the bylaw in the neighborhood or district in which the property is located.

(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) Unnecessary hardship has not been created by the [applicant].

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

Ordinance § 1207(A)(1)–(5); see also 24 V.S.A. § 4469(a)(1)–(5).

If any one of the five criteria is not met, a variance must be denied. In re Dunnett, 172 Vt. 196, 199–200 (2001) (citing Blow v. Town of Berlin Zoning Adm'r, 151 Vt. 333, 335 (1989). An applicant bears the burden of providing sufficient evidence to support a finding with respect to each of the five criteria. In re Mutschler, Canning & Wilkins, 2006 VT 43, ¶ 9. Here, the DRB denied the variance request based solely on subsection (3) — that the unnecessary hardship was created by the Applicant. We agree.

The DRB's July 3, 2023 decision to approve Permits 8275 and 8276 included the express requirement to "merge the two properties and use 43-51-01 as tax map for combined lots." Ex. 5. If Applicant disagreed with merging the two parcels, or was confused by that language in the approval, Applicant's remedy was to appeal those permits or petition the DRB for reconsideration of its decision.[2] Applicant did not appeal the permits, and they are therefore final and binding. 24 V.S.A. § 4472. Instead, Applicant went forward with purchasing the Property and completing the other work items authorized by those permits. Accordingly, we conclude that any unnecessary hardship was created by Applicant in its efforts to pursue its development of a storage facility at the Property.

Applicant's motion fails to demonstrate compliance with any of the five variance criteria. Rather, the entirety of Applicant's legal analysis is spent attempting to ascribe blame to the Town for

---

[2] Even if Applicant misunderstood one of the permit conditions, it is disingenuous to blame the Town for such a misunderstanding. The Town approved Permits 8275 and 8276 at Applicant's request. Again, Applicant could have appealed those approvals to this Court or petitioned the Town for reconsideration of its decision. Applicant chose not to avail itself of those remedies, but instead proceeded to do work under those permits.

creating the conditions that led to the need for a variance rather than recognizing the context in which the need for a variance was created.

For example, with respect to subsection (1), Applicant argues that the size of the Property, together with the presence of commercial self-storage units, permitted by the Town's approval of Permits 8275 and 8276, created the unique physical conditions of the Property. The Court is confused by this argument. These so-called "conditions" of the Property are not unique physical conditions of the Property itself, such as significant topographical or other site-based constraints. Rather, they are precisely the structures and uses of the Property that Applicant, and its predecessor in interest, chose to develop in that location. The minimum lot size requirements in the Ordinance also do not create unique physical conditions. Rather, they are duly adopted provisions of the Ordinance. See 24 V.S.A. § 4469(a)(1) (explaining that unnecessary hardship cannot be created by the provisions of a bylaw). The Property presently conforms with the minimum lot size requirements such that, as it currently exists, lot size is not a present "unique physical condition" of the Property. Lot size only becomes a concern under the Ordinance if the variance were granted in order to accommodate Applicant's desire to abandon the residential use of the Property. There is no basis to conclude that such conditions were created by the Town.

With respect to subsection (2), Applicant has similarly failed to demonstrate that a variance is necessary to make reasonable use of the Property. In fact, Applicant acknowledges that it can still make use of the single-family home as well as its existing permitted storage facility, but that it simply does not want to be a residential landlord. Reasonable use does not mean an Applicant's preferred use. Rather, the standard is whether <u>any</u> reasonable use can be made of the Property. <u>Gadhue v. Marcotte</u>, 141 Vt. 238, 240 (1981). Because the Property can still be used as both a residence and for commercial storage, we conclude that Applicant fails to satisfy subsection (2).

Lastly, Applicant argues that if the Court denies a variance, Applicant will be forced to remove the single-family residence and replace it with additional storage units. Applicant suggests that such actions would go against Vermont's need for affordable housing and the best interests of the community. There is no provision of law that would allow the Court to grant a variance solely based on such policy reasons, even if those policy concerns would be generally valid. Additionally, it is ultimately Applicant's choice whether to demolish the single-family home, subject to any necessary local approvals. If anything, this argument demonstrates that a variance is inappropriate because Applicant can still make beneficial use of the Property absent a variance related to its storage business.

Applicant makes no arguments with respect to Ordinance § 1207(A)(4) and (5).

5

## Conclusion

For the foregoing reasons we conclude that the material facts are not in dispute and the Town is entitled to judgment as a matter of law. Applicant's application for a variance fails to meet the relevant standards, most notably under Ordinance § 1207(A)(1)–(3) and fails to address subsections (4) and (5). The undisputed material facts demonstrate that Applicant has created the hardship that it now seeks a variance for. Additionally, Applicant can still make reasonable use of the Property if a variance is denied. For these reasons the Town's motion is **GRANTED** and Applicant's is **DENIED**. We answer Question 1, which asks whether Applicant is entitled to a variance, in the negative.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed April 4, 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division